0548

Floyd HAIRSTON, Employee; Glendora Hairston, Widow; and Danny Pearson, Step-Child, Respondents, v. RE: LEASING, INC., Jim Moore Cadillac-Oldsmobile, Inc., C & M Trucking and Hyatt Trucking, Employers; Insurance Company of North America, Carrier for Re: Leasing; and S. C. Automobile Dealers Association Self-Insurers Fund, Carrier for Jim Moore Cadillac-Oldsmobile, Inc., Appellants.

(334 S. E. (2d) 825)

Court of Appeals

494

*William W. Watkins,* of *Turner, Padget, Graham & Laney, P.A.,* Columbia, *for appellant Re: Leasing, Inc., et al.*

*J. Reese Daniel,* of *Thomas, Windham, Daniel & Dial,* Columbia, *for appellant Jim Moore Cadillac-Oldsmobile.*

*John Koon* and *William F. Able,* Columbia, *for respondents.*

Heard June 26, 1985.

Decided Sept. 4, 1985.

*Per Curiam:*

This case involves a workers' compensation claim brought by the respondents for death benefits for the deceased worker, Floyd Hairston. The single Industrial Commissioner, the Full Commission and the circuit court have approved an award in compensation for Hairston's death. The two parties who were ordered to pay the benefits, Re: Leasing, Inc., (Leasing) and Jim Moore Cadillac-Oldsmobile, Inc., (Jim Moore), and their insurance carriers, have appealed. We affirm.

The primary question is whether Hairston was the statutory employee of both Leasing and Jim Moore as found by the Commission and the circuit court. In addition, Jim Moore appeals the compensation rate used to determine the award.

Hairston was employed as a truck driver by Hyatt Trucking Company (Hyatt Trucking) in Columbia. Hyatt Trucking is owned by Charles Kenneth Hyatt (Hyatt). Hairston was killed in Kansas City, Missouri, in 1979 while unloading a car from a carrier owned by Hyatt Trucking.

Leasing is a Tennessee corporation which leases cars to various clients including car rental agencies. In 1979 Leasing also owned Auto Mart of Columbia, which sold cars, and Re: Leasing Reconditioning Center (ReCon), which reconditioned the cars prior to sale. Both these businesses were located on the premises of Hyatt Trucking, and Hyatt served as manager of both businesses. Hyatt Trucking hauled eighty to eighty-five percent of the cars Leasing transported in the Columbia area.

Jim Moore is a new car dealership in Columbia.

In February 1979, Hyatt Trucking reached an agreement with Jim Moore to transport new cars to Columbia from Kansas City, Missouri. This arrangement was an unusual one, because new cars are normally shipped to the dealer directly from the factory and the dealer does not get involved in the transportation of the cars. According to the testimony of Jim Moore's general service manager, Jim Moore was desperately in need of cars to sell during this period in 1979, which accounted for the unusual arrangement.

Following the agreement with Jim Moore, Hyatt Trucking contracted with Leasing to pick up cars from a rental agency in Columbus, Georgia, and transport them to Wichita, Kansas, on the same trip. Because the truck would be carrying a payload on both ends of the trip, both Jim Moore and Leasing received a reduced rate. Jim Moore was not aware of Hyatt's agreement with Leasing.

Hairston delivered Leasing's cars to Wichita as agreed upon. He then drove to Kansas City, Missouri, to pick up the cars for Jim Moore. Hairston was killed on February 10, 1979, when a car which was to be delivered to Jim Moore slipped off the loading ramp and fell on him.

Hyatt Trucking had no workers' compensation coverage. Hairston's widow filed a claim for workers' compensation with both Leasing and Jim Moore. Both Leasing and Jim Moore denied the claim on the ground that Hairston was the statutory employee of neither corporation. Jim Moore further alleged that even if Hairston had been their employee he was only a casual employee and therefore not covered by workers' compensation.

Hairston was employed by Hyatt Trucking and was paid by that company. Hyatt Trucking paid its drivers by the mile, figured on the shortest route using a road atlas. Leasing and Jim Moore were charged a flat rate for the delivery and transportation of the vehicles. Hyatt Trucking chose its own drivers, supplied the trucks and controlled the basic details of the trips. Leasing and Jim Moore determined the delivery dates and pick-up or drop-off points for the vehicles on this particular trip.

A workers' compensation award may not be made unless an employment relationship existed at the time of the alleged injury for which the claim is made. *Murray v. Mizell Trucking Company,* 334 S. E. (2d) 128 (S. C. Ct. App. 1985); *McLeod v. Piggly Wiggly Carolina Company,* 280 S. C. 466, 313 S. E. (2d) 38 (Ct. App. 1984). The determination of the employer-employee relationship is jurisdictional and the relationship must be proven by the preponderance of the evidence. *Murray v. Mizell Trucking Co.; McLeod v. Piggly Wiggly Carolina Co.*

The Commission found that at the time of his death, Hairston was jointly employed by and continuously serving

both Leasing and Jim Moore. Further, the Commission found that the activities of Leasing and Jim Moore "were so intertwined that [Hairston] was in the course of business of both employers at the time of his death." From these findings of fact the Commission held that Hairston was the statutory employee of both Leasing and Jim Moore under the provisions of § 42-1-400, Code of Laws of South Carolina (1976). We agree.

Section 42-1-400 provides:

> When any person, in this section and §§ 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42-1-420 to 42-1-430 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

Both Leasing and Jim Moore argue that this statute is inapplicable in this particular case because the transportation of vehicles is not a part of either company's trade, business or occupation. We hold, however, that if the nature of the work being done is such an integral part of the operations of the company for which it is done that the company cannot function without it, the company falls under the statutory employee situation.

The leading case interpreting this statute in South Carolina is *Marchbanks v. Duke Power Company*, 190 S. C. 336, 2 S. E. (2d) 825 (1939). This case involved the claim of an employee of an independent contractor who was employed by the power company to paint some of the power company's poles. The employee was injured while painting the poles. The court found that the maintenance of the power company's transmission lines was an important part of its trade

or business and that such employee was engaged in the trade, business or occupation of the power company.[1]

■ The court in *Marchbanks* noted that each case must be determined on its own facts, and no general rule or formula could be laid down for the determination of whether the work in any given case was a part of the general trade, business or occupation of the principle employer or owner. Thus, even work which an employer might never perform with his own employees may be considered part of his trade or business if it is essential to the functioning of the owner's business. *See Singleton v. J. P. Stevens & Co.*, 533 F. Supp. 887 (D.S.C. 1982), *aff'd*, 726 F. (2d) 1011 (4th Cir. 1984).

Just as the painting of power line poles was considered by the court to be a part of the trade or business of a power company, so was the painting of a water tank considered part of the trade or business of a textile mill in *Boseman v. Pacific Mills*, 193 S. C. 479, 8 S. E. (2d) 878 (1940). There the court found that the nature of the work of the mill, that of manufacturing cotton into cloth, required the best fire protection possible so the maintenance of the water tank was an integral part of the mill's business.

■ In the present case the preponderance of the evidence supports the finding that Hairston was performing services which were part of the trade or business of both Leasing and Jim Moore. The transportation of vehicles is essential to both the leasing and sale of automobiles. Hyatt testified that the only practical means of transporting vehicles is hauling them on trucks. It is unimportant that Jim Moore did not normally arrange for transportation of new cars; clearly such transportation was necessary to get the cars to Columbia, and just because it was accomplished in an unusual manner has no bearing on Jim Moore's liability.

Leasing argues that it could not be considered an owner under § 42-1-400 because there was no causal connection

---

[1] The position of the parties in *Marchbanks* was somewhat different than in this case, as pointed out by appellant. The employee in *Marchbanks* argued that the power company was *not* his statutory employer so as to remove the claim from the workers' compensation arena and allow the employee to sue in tort. However, the general principles of *Marchbanks* are applicable to the present case.

between the property owned and the injury sustained. It is true that the car which killed Hairston was not owned by Leasing and indeed that Hairston had already completed delivery of Leasing's cars when the fatal accident occurred. Hairston, however, was employed by Hyatt who in turn was employed by Leasing. The evidence establishes that Hyatt was receiving his directions from Leasing. Leasing made the major decisions as far as its operations in Columbia were concerned. Finally, and most importantly, Hyatt admitted that he, as an employee of Leasing, aimed to save Leasing money in any way possible and Hairston's whole trip, with payloads each way, was part of one package. As such, Leasing's involvement cannot be separated from Jim Moore's and both companies are statutory employers of Hairston.

In *Parker v. Williams and Madjanik, Inc.,* 275 S. C. 65, 267 S. E. (2d) 524 (1980), the court quoted with approval the following language:

> The manifest purpose [of § 42-1-400] is to afford the benefits of compensation to the men who are exposed to the risks of its business, and to place the burden of paying compensation upon the organizer of the enterprise. In consequence, both the owner and the contractors whom he engages to do his work, are subjected to the requirements of the Act, and the workers receive double protection.

*Id.* at 74, 267 S. E. (2d) at 528, [quoting *Blue Ridge Rural Elec. Co-op v. Byrd,* 238 F. (2d) 346 (4th Cir. 1956), *rev'd on other grounds,* 356 U. S. 525, 78 S. Ct. 893, 22 L. Ed. (2d) 953 (1958)]. We can think of no clearer application of this principle than in this case.

Jim Moore argues that even if Hairston is considered its employee, he was only a casual employee and thus outside the coverage of workers' compensation. We are unpersuaded by this argument.

Casual employees are excluded from coverage under § 42-1-130. This exclusion applies where liability is asserted under the "owner" section, § 42-1-400. *Benbow v. Edmunds High School,* 220 S. C. 363, 67 S. E. (2d) 680 (1951):

Courts have generally avoided giving a general definition of a casual employee because each case must be decided on

its own peculiar facts and circumstances. *Smith v. Coastal Tire and Auto Service*, 263 S. C. 77, 207 S. E. (2d) 810 (1974). Larson describes employment as casual when it is "irregular, unpredictable, sporadic and brief in nature." 1C Larson, *Workmen's Compensation Law*, § 51.00, p. 9-105 (1982). In *Smith*, the court stated:

> It has been held that where employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual.

*Smith v. Coastal Tire and Auto Service*, 263 S. C. at 81, 207 S. E. (2d) at 812.

The court in *Smith* found that the sixteen-year-old son of the owner of the tire company was a casual employee because he worked whenever he felt like it, the company had no control over when or how long he would work, and when he did work it was irregular and for relatively short periods of time. Similarly, in *Privette v. South Carolina State Forestry Commission*, 265 S. C. 117, 217 S. E. (2d) 25 (1975), the court held that the claimant, who owned his own tractor and was not hired to perform land clearing work for the state agency but was merely substituting for the individual who was hired by the state agency so that that individual could go to the doctor, was a casual employee.

The facts in this case are quite different from those in *Smith* or *Privette*. Here Hairston's employment was much more than by chance or simply filling in for another regular employee. The evidence shows that Hairston was a regular employee of Hyatt Trucking. Hyatt Trucking contracted with Jim Moore to pick up and transport vehicles from Kansas City. The evidence shows no intention or understanding that Hairston's employment should not be continuous; moreover, Hyatt Trucking, Leasing and Jim Moore all exercised control over Hairston. Indeed, Hairston had already made one such trip for Jim Moore; it was on his second trip that the fatal accident occurred. No one can say how many other trips he might have made had he not been killed. Obviously this was more than "strictly chance employment." *Privette*, 263 S. C. at 123, 217 S. E. (2d) at 28.

Finally, Jim Moore appeals the rate of compensation awarded in this case. The Commission found that Hairston's average weekly wage was such that the maximum compensable rate of $185.00 per week would apply. This award is supported by substantial evidence. Hairston's 1976 W-2 form revealed an average weekly wage of $214.42. Additionally, both Hyatt and Hairston's widow testified that he received money for mileage and expenses. The testimony reveals that Hairston had made one other trip to the midwest and one to Ohio just prior to his death. Even at the lowest mileage rate (13 cents a mile) Hairston would have reached the maximum compensable rate, i.e., sixty-six and two-thirds of the average weekly wage in South Carolina during the preceding fiscal year. *See* § 42-9-290. The evidence fully supports the findings of the Commission and circuit court.

Accordingly, the order of the circuit court is affirmed.

Affirmed.