1479

Richard REVELS, Appellant v. HOECHST CELANESE CORPORATION
and John Doe, of whom Hoechst Celanese Corp., Respondent.

(391 S.E. (2d) 731)

Court of Appeals

---

*J. Leeds Barroll, IV* and *Bonnie P. Horn,* Columbia, *for appellant.*

*R. W. Dibble, Jr.* and *Jane W. Trinkley,* both of *McNair Law Firm,* Columbia, *Marc E. Kasowitz* and *Jack Atkin,* both of *Mayer, Brown & Platt,* New York City, *for respondent.*

Heard March 14, 1990.

Decided April 2, 1990.

GOOLSBY, Judge:

The dispositive issue in this personal injury action brought by Richard Revels, an employee of Kenan Transport Company, against Hoechst Celanese Corporation is whether Revels was Celanese's "statutory employee" when he was injured at Celanese's distribution terminal while assisting in the loading of chemicals into Kenan's tanker. The trial court granted Celanese's motion for summary judgment, finding Revels was Celanese's "statutory employee." We affirm.

According to Leslie J. Cribb, manager of Celanese's terminal operations, Celanese distributes liquid organic chemicals to customers throughout the southeastern United States from its terminal in Rock Hill and uses common carriers to transport to its customers the chemicals loaded into the carriers' tankers at its terminal. One common carrier used by Celanese was Kenan Transport Company, Revels' employer. Cribb's affidavit declares, and neither Revels' affidavit nor the statement he gave on October 14, 1986, contradicts, that the driver of the tanker being loaded participates in the loading operation, which a Celanese loading operator directs, by monitoring the levels of chemicals being pumped into the tanker.

According to Revels' statement, he drove a tanker truck beneath a loading rack at Celanese's distribution center on

September 29, 1986, to receive a load of alcohol and acetone and, while atop the tanker and checking the level of chemicals being pumped into the tanker's last compartment, inhaled fumes from formaldehyde flushed from the other end of the loading rack by the loading operator. The formaldehyde fumes, Revels' statement discloses, burned his eyes and nose and injured his lungs.

In South Carolina, a simple test is prescribed for determining the question of whether an employee who bears no contractual relationship to an owner is, through the employment by another person, the owner's "statutory employee." The test is "whether or not [the work] being done is or is not a part of the general trade, business or occupation of the owner." *Hopkins v. Darlington Veneer Co.*, 208 S.C. 307, 311, 38 S.E. (2d) 4, 6 (1946); S.C. CODE ANN. § 42-1-400 (1976). The employee is to be excluded or included as a "statutory employee" depending upon whether or not the person is performing or executing a part of the owner's general business. *Hopkins v. Darlington Veneer Co., supra.* Because there is no general rule for determining whether the work in a given case satisfies the prescribed test, each case must be decided on its own facts. *Raines v. Gould, Inc.*, 288 S.C. 541, 343 S.E. (2d) 655 (Ct. App. 1986). Doubts concerning the application of the prescribed test, however, must be resolved in favor of inclusion of employers and employees under the Workers' Compensation Act. *See Adams v. Davison-Paxon Co.*, 230 S.C. 532, 544, 96 S.E. (2d) 566, 572 (1957) (" '[T]he basic purpose of the Compensation Act is the inclusion of employers and employees, and not their exclusion; and we add that doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion.' ").

We have no difficulty in deciding that Revels was Celanese's "statutory employee" when he was injured. The work then being performed by Revels, *i.e.*, checking the levels of the chemicals being loaded into the tanker, was a part of Celanese's general business.

The nature of Celanese's business is the distribution of chemicals. The distribution of chemicals necessarily involves their transportation. Before they can be transported, the chemicals must first be pumped or loaded into tankers. The loading of chemicals into a tanker requires that someone

monitor the amount of chemicals being pumped into the tanker's compartments, the very work Revels was performing when he received his injuries. By engaging in such activity, Revels participated in the loading operation, an activity that normally involves a Celanese employee. In so doing, Revels performed work that was both part of Celanese's general business and its obvious routine. *See* A. LARSON, WORKMEN'S COMPENSATION § 49.12 at 9-43 (1986) ("Delivery and transportation cases turn largely on common-sense considerations of whether the delivery activity was routine or extraordinary for this type of business.").

We have considered the "trucking cases" principally relied on by Revels and find them inapplicable here. See *Wilson v. Daniel Int'l Corp.*, 260 S.C. 548, 197 S.E. (2d) 686 (1973) (a truck driver employed by a *supplier* and injured by the defendant construction company's employee at a construction site held not to be a "statutory employee"); *Dickerson v. Eastman Kodak Company*, 569 F. Supp. 1221 (D.S.C. 1983) (a truck driver employed by a common carrier and injured by a forklift while walking through the defendant's warehouse to pick up shipping documents held not to be a "statutory employee"). Other "trucking cases" more approximate the one here. *See Hopkins v. Darlington Veneer Co.*, *supra* (a truck driver employed by a logger and injured while unloading blocks cut from timber owned by the defendant veneer company held to be a "statutory employee"); *Hairston v. Re: Leasing Inc.*, 286 S.C. 493, 334 S.E. (2d) 825 (Ct. App. 1985) (a truck driver employed by a common carrier and fatally injured when an automobile to be delivered to the defendant car leasing company slipped off a loading ramp and crushed him held to be a "statutory employee").

Affirmed.

SANDERS, C.J., and SHAW, J., concur.