David CARRIER, Jr.,

v.

**WESTVACO CORPORATION and P.S. Charleston Corp., d/b/a Pre–Stress Concrete, Inc.**

Civ. A. No. 2:90–2863–18.

United States District Court, D. South Carolina, Charleston Division.

Oct. 26, 1992.

Andrew K. Epting, Jr., Charleston, S.C., H. Lynn Shoemaker, Kingsport, Tenn.,

George Kefalos, Charleston, S.C., for plaintiff.

G. Dana Sinkler, Charleston, S.C., for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court on defendant Westvaco Corporation's motion for summary judgment.

## I. BACKGROUND

Westvaco Corporation (hereinafter "Westvaco") manufactures and distributes paper and chemicals. The majority of Westvaco's products are transported by rail with approximately 29% to 30% by trucks.[1] Westvaco, as part of its present business, does not perform trucking.[2] At the time of the accident bringing forth the present matter, Westvaco used various carriers depending on availability and rate competitiveness.[3]

On March 18, 1988, National Aluminum Consumer Products Division placed an order by telephone for eleven rolls of Westvaco Superliner paper to be delivered to its plant in Caldwell, Ohio. The Westvaco traffic department made the arrangements for the shipment.[4]

Willis Wiggins of Westvaco's traffic department arranged the transportation of the shipment through the Ken Carmen Agency, an independent agent for Indepen-

1. Brinkley Dep. p. 17.

2. For a number of years prior to this accident and up until 1987, Westvaco had its own major trucking operation for shipment of its products which was headquartered in Richmond, Virginia. The trucking operation operated across all divisions of the company and functioned as a separate profit center. It was supplemented by other independent carriers. After trucking became deregulated, Westvaco began using contract type carriers. Brinkley Dep. pp 13–15.

3. Westvaco dealt with brokers or agents representing various trucking companies. As a prerequisite to using a carrier, Westvaco would retain a copy of that carrier's operating authority, a copy of its insurance certificate, and a copy of its rate structure. Westvaco, itself, had no contract with any particular trucking company.

(Today, Westvaco manages the shipment of its products through a pool contract). Wiggins Dep. pp. 27–28.

4. A bill of lading was prepared reflecting the carrier transporting the shipment (Inway), the trailer and tractor numbers, the shipment week (April 4) and the total freight charge ($764.75) based on a freight rate of $1.980 per hundred pounds. The shipping department also prepared an invoice reflecting a total sales price of $9,062.94 less the freight allowance of $764.48 for a net of $8,298.46. Wiggins Dep.Ex. 1 at 2–3.

In negotiating the sale of its products, Westvaco includes an allowance for the costs of delivery based on a fifty (50) ton rail rate. Brinkley Dep. pp. 18–20. In the instant case, all but $.27 of the cost of transportation was paid by Westvaco through the 50 ton rail rate allowance.

dent Freight Ways (hereinafter "Inway") located in Summerville, South Carolina.[5] Ligon Trucking Company (hereinafter "Ligon") provided drivers for Inway. David Carrier (hereinafter "Carrier"), an employee of Ligon,[6] was the driver assigned to the Westvaco pick-up.

Carrier arrived at the Westvaco plant at approximately 4:30 p.m. on April 9, 1988 and drove to the warehouse and loading facility where he lined up behind other trucks waiting to be loaded. After checking in with the Westvaco dispatcher, Carrier went to the employee cafeteria for a cup of coffee. He thereafter went outside and decided to walk out on a pier over the water on the Cooper River. While Carrier was standing on the concrete pier, the pier collapsed causing him to sustain injuries.

## II. ANALYSIS

Westvaco has moved for summary judgment on a defense asserted in its answer contending that Carrier, at the time of his injury, was a statutory employee of Westvaco under § 42–1–400 of the Code of Laws of South Carolina. S.C.Code Ann. § 42–1–400 (Law.Co-op.1976 as amended). Therefore, Westvaco contends that Carrier's exclusive remedy lies under the South Carolina Workers' Compensation Act and jurisdiction over this matter is vested solely in the South Carolina Workers' Compensation Commission.

■■■ To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–248, 106 S.Ct. at 2509–2510 (emphasis in original). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed. R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### A. *Jurisdictional Determination*

■■■ The determination of whether or not Carrier is a statutory employee of Westvaco is a question of subject matter jurisdiction. *Carter v. Florentine Corp.*, 423 S.E.2d 112, n. 1 (1992); *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890, 892 (1991). Every court has the power and duty to determine whether or not it has jurisdiction of a cause presented to it for determination, including the power to decide all questions, whether of law or fact, which are necessary to determining jurisdiction. *See Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18, 21–22 (1963). "It is recognized that in federal court the question of a company's trade, business or occupation is often one of fact for the jury." *Singleton v. J.P. Stevens & Co.*, 533 F.Supp. 887, 888 (D.S.C.1982), *aff'd*, 726 F.2d 1011 (4th Cir.1984), citing *Byrd v. Blue Ridge Rural Electric Coop.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *Byrd*, however, "does not stand for the proposition that if there is no issue

---

**5.** The Ken Carmen Agency was an agent for several trucking companies, one of which was Inway.

**6.** Carrier was at one time a driver for Red Mule Leasing, TDS, or Guaranteed Transportation.

Red Mule Leasing went into bankruptcy. Ligon took over operations of Red Mule Leasing. Carrier then became a driver for Ligon. Carrier Dep. pp. 13–17.

genuinely in dispute, the question of employment status must be nevertheless submitted to a jury." *Id.* Jurisdictional questions present issues for the determination of the court and not a jury. *Bargesser v. Coleman Co.*, 230 S.C. 562, 96 S.E.2d 825, 827 (1957). The Fourth Circuit Court of Appeals in *Walker v. United States Gypsum Co.*, 270 F.2d 857 (4th Cir.1959), *cert. denied*, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960), stated that the matter of employment status, and whether jurisdiction lies with the Workers' Compensation Commission[7] or the courts is a question peculiarly appropriate for summary judgment when there is no disputed genuine issue of fact. *Id.* at 860–61.

**B.  Statutory Employee Determination**

■ "Where an employer is covered by Workers' Compensation, the Act is the exclusive remedy of an employee injured in the course and scope of employment." *Carter v. Florentine Corp.*, 423 S.E.2d 112 (1992), citing S.C.Code Ann. § 42–1–540 (Law.Co-op.1976 as amended). The exclusivity provision applies both to "direct" employees, and to "statutory employees" as defined in S.C.Code Ann. § 42–1–400 (Law. Co-op.1976 as amended). Section 42–1–400 is directly applicable to the present case and provides:

> When any person … referred to as 'owner,' undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person … (referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any work-

man employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him. S.C.Code Ann. § 42–1–400 (Law.Co-op.1976 as amended).

*1.  Statutory Employee Tests*

South Carolina has employed three tests in determining whether an employee of a subcontractor is a statutory employee of the owner:

(1) is the activity an important part of the owner's business;

(2) is the activity a necessary, essential, integral part of the business; and

(3) has the identical activity been performed by employees of the principal employer?

*Carter*, 423 S.E.2d 112 (1992). South Carolina courts have given a broad construction to the Act, stating that where there are doubts about whether a worker is a statutory employee, these doubts must be resolved in favor of inclusion of employees and employers under the Workers' Compensation Act. *See Gentry v. Milliken & Co.*, 414 S.E.2d 180 (S.C.Ct.App.1992); *Revels v. Hoechst Celanese Corp.*, 301 S.C. 316, 391 S.E.2d 731 (S.C.Ct.App.1990); *Brittingham v. Williams Sign Erectors, Inc.*, 299 S.C. 259, 384 S.E.2d 319 (S.C.Ct. App.1989).

Westvaco has satisfied the first two tests listed above.[8] The trucking of goods from its plant to its customers is an essential and important part of Westvaco's trade and a necessary and integral part of its business. *See Revels*, 391 S.E.2d at 732.[9] Carrier, as a driver for Ligon, was involved in the transportation of goods from the West-

---

7. The *Walker* court referred to the Workers' Compensation Commission by its previous title, the Industrial Commission.

8. The South Carolina Supreme Court in the very brief opinion of *Carter* concluded in two sentences that the plaintiff was a statutory employee. In doing so, the court mentioned only the first two tests. No mention or discussion was had concerning the applicability of the third test. Thus, this court concludes that satisfying any one of the tests justifies a finding that an

employee of a subcontractor is a statutory employee of the owner.

9. The *Revels* court held that the driver of a Keenan Transportation Company truck transporting manufactured products to a Hoechst customer was a statutory employee of Hoechst when he was injured while picking up a load of chemicals because "the nature of Hoechst's business is the distribution of chemicals. The distribution of chemicals necessarily involves their transportation."

vaco plant to a Westvaco customer. This alone is enough to find that Carrier is a statutory employee of Westvaco. *Carter*, 423 S.E.2d 112 (1992). Furthermore, Westvaco has in the past equipped, managed, maintained and run its own trucking division. Thus, Westvaco may even have satisfied the third test.[10] This court has no hesitation in finding Carrier to be the statutory employee of Westvaco.

### 2. Course of Employment

■ Carrier argues, however, that at the moment of his injury he was not engaged in work essential to Westvaco's trade or business and thus he cannot be found to be a statutory employee of Westvaco. Carrier reasons that standing on the pier cast him outside the course of employment. South Carolina has interpreted "course of employment" in the context of workers' compensation as follows:

> [A]n employee, to be entitled to compensation, need not be in the actual performance of the duties for which he was expressly employed in order for his injury or death to be in the 'course of employment' and thus compensable. It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment.

*Merritt v. Smith*, 269 S.C. 301, 237 S.E.2d 366, 369 (1977). Carrier was injured while waiting to have his truck loaded. His waiting was consistent with his contract of hire and was incidental to his employment as a truck driver. Thus, this court finds that Carrier was acting in the course of his employment while he stood on the pier waiting to have his truck loaded.

### 3. Casual Employee

■ Carrier further argues that even if he is considered Westvaco's employee, he was only a casual employee and thus outside the coverage of workers' compensation. This court is also unpersuaded by this argument. An employee is defined as:

> The term 'employee' means every person engaged in an employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed, but *excluding a person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer.*

S.C.Code Ann. § 42–1–130 (Law.Co-op.1976 as amended) (emphasis added). Since this court finds that the work being performed by Carrier *was* part of the trade, business, profession or occupation of Westvaco, it is not necessary to consider whether Carrier's

---

10. *See Gentry,* 414 S.E.2d at 181 ("To determine if certain work is part of the general trade, business, or occupation of an owner, courts focus on whether the work is an important, necessary, essential, and integral part of the business and whether it is identical to work that *has been performed* by employees of the owner.") (emphasis added); *Hairston v. Re: Leasing, Inc.,* 286 S.C. 493, 334 S.E.2d 825, 827 (S.C.Ct.App.1985) ("[E]ven work which an employer might never perform with his own employees may be considered part of his trade or business if it is essential to the functioning of the owner's business."); *Smith v. FCX, Inc.,* 744 F.2d 1378, 1379 (4th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 848 (1985) ("The South Carolina Supreme Court has held that a person is performing the trade, business or occupation of an owner if he is engaged in work that is essential to the function of the employer's business, even if the employer never performed that particular work with his own employees."). *But see Dickerson v. Eastman Kodak Co.,* 569 F.Supp. 1221, 1224 (D.S.C.1983),

citing and quoting Larson's Workmen's Compensation Law § 49.12 at 9–58 (1982) ("[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since after all, this could be said of practically any repair, construction, or transportation service. The test ... is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.")

This court recognizes *Dickerson* and its reliance on Professor Larson's treatise. Nonetheless, since *Dickerson* was decided, there have been a number of South Carolina cases that have rejected the notion that an indispensable activity must be carried on through employees rather than independent contractors. In addition to the cases cited earlier in this footnote, *see, e.g., Smith v. T.H. Snipes & Sons, Inc.,* 411 S.E.2d 439 (1991); *Revels,* 391 S.E.2d 731 (Ct. App.1990). This court finds the later cases controlling.

employment was casual since for an employee to be excluded under the act, his employment must be *both* casual *and* not in the trade, business, profession or occupation of his employer.[11]

### III. CONCLUSION

This court finds that David Carrier was, at the time of his injury, the statutory employee of Westvaco. Accordingly, this court is without jurisdiction to entertain his common law claims for injuries sustained. There being no genuine issue of material fact, the defendant is entitled to summary judgment as a matter of law. It is therefore,

ORDERED that defendant's motion for summary judgment be GRANTED.

AND IT IS SO ORDERED.

---

**11.** Nonetheless, were the question to be considered, Carrier's employment in this case would not be considered casual. Carrier was a regular truck driver of Ligon. Ligon provided drivers for Inway. Westvaco made the arrangements for the shipping of the product through Inway. Carrier's employment was more than strictly chance employment. *See Hairston,* 334 S.E.2d at 828–29.