597 S.E.2d 863

Susan EDENS, Personal Representative of the Estate
of Christopher Edens, deceased, Appellant,

v.

Loris BELLINI, S.p.a., Camel Robot S.r.i., Symtec, Inc.,
IDEA, Inc., Milliken & Company, Kelvin Statom,
Kevin Gingerich and Dale Coy, Defendants,

Of whom Milliken & Company, Kelvin Statom, Kevin
Gingerich and Dale Coy are the Respondents.

No. 3815.

Court of Appeals of South Carolina.

Submitted May 12, 2004.
Decided June 1, 2004.

434

Stephen R.H. Lewis and Karen Creech, both of Greenville, for Appellant.

Mark W. Bakker and Henry L. Parr, Jr., both of Greenville, for Respondents.

ANDERSON, J.:

Susan Edens, personal representative of the Estate of Christopher Edens (the Estate), filed wrongful death and survival actions against Milliken & Company, and three of its employees, Kelvin Statom, Kevin Gingerich, and Dale Coy (collectively, Respondents). The trial judge dismissed the claims pursuant to Rules 12(b)(1) and 56 of the South Carolina Rules of Civil Procedure. We affirm.[1]

### *FACTUAL/PROCEDURAL BACKGROUND*

On February 10, 1998, during the course of his employment as a subcontractor at Milliken's Abbeville plant, Christopher Edens was struck and crushed to death by a piece of machinery. Edens' employer, Sanders Brothers, Inc., had assigned him to the Abbeville plant where he assisted Milliken employees in various plant-related projects for about a year prior to

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

his fatal on-the-job accident. During the morning and early afternoon on the day of the accident, Edens had been assisting Milliken employees install a cylinder on the door of a dye vat in the robotic shuttle area.

The area of the plant where the accident occurred had a massive robotic shuttle which moved back and forth on tracks to transport wool to and from dye vats where the wool was dyed. Along with other safety devices, pressure-sensitive "safety mats" were positioned on the floor between the dye vats. Once stepped upon, these mats would automatically stop the shuttle's movement.

Depositions of several Milliken employees revealed that, on the morning of the accident, Statom, the shuttle operator, had become "aggravated" because the safety mats were repeatedly stepped upon, stopping the robotic shuttle. As a result, Gingerich, acting on his own volition, disconnected the safety mats in his particular area of the plant floor. After disconnecting the mats, Gingerich warned Statom that Sanders Brothers employees would be working in that area and instructed him not to send the shuttle there. On the few occasions when the robotic shuttle approached the portion of the tracks where the employees were working on the dye vat project, the individuals working there were asked to leave the pathway of the shuttle so that it could pass through.

After work on the dye vat in this area was completed, both the Milliken employees and subcontractors dispersed. However, the safety mats were not reconnected. Later in the day, Edens returned to this dye vat area to check whether there was any leakage. The Milliken shuttle operator, unaware anyone was in the vicinity, activated the robotic shuttle in the dye vat area. The shuttle pinned Edens against a dye vat. He ultimately died from his injuries.

The Estate filed a Workers' Compensation suit against Edens' employer, Sanders Brothers, Inc., a mechanical contracting firm. The Workers' Compensation Commission awarded the Estate benefits for Edens' accidental death. On August 5, 1999, the Estate filed wrongful death and survival actions against various manufacturers and distributors of the allegedly defective machinery, averring negligence, strict liability, and breach of warranty.

On August 17, 2001, during the discovery process, the Estate moved to amend the complaints to include Milliken and individual Milliken employees, Statom, Gingerich, and Coy,[2] as defendants with regard to a negligence cause of action.[3] The motion to amend was granted.

Respondents moved to dismiss the claims pursuant to Rules 12(b)(1), 12(b)(6), and 56, SCRCP. The Circuit judge granted the motion to dismiss pursuant to (1) Rule 12(b)(1) holding the court "lack[ed] subject matter jurisdiction because of the exclusivity provisions of the Workers' Compensation Act[4] when there is no evidence that [Respondents] deliberately or specifically intended the injury to occur" and (2) Rule 56 "because the statute of limitations expired before [the Estate]'s causes of action against the [Respondents] were asserted in this Court." The trial judge then entered judgment for Respondents pursuant to Rule 54(b), SCRCP.

## ISSUE

Did the Circuit Court err in concluding the Estate's action was barred by the exclusivity provision of the South Carolina Workers' Compensation Act?

## STANDARD OF REVIEW

Coverage under the Workers' Compensation Act depends on the existence of an employment relationship. *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 41 S.E.2d 872 (1947); *see also Gray v. Club Group, Ltd.*, 339 S.C. 173, 184, 528 S.E.2d 435, 441 (Ct.App.2000) ("Before provisions of the Workers' Compensation Act can apply, an employer-employee relationship must exist; this is an initial fact to be established."). Workers' Compensation awards are authorized only if an employer-employee relationship exists at the time of the injury. *Dawkins v. Jordan*, 341 S.C. 434, 534 S.E.2d 700 (2000).

---

**2.** Dale Coy was the engineering services manager for the dye package area at Milliken's Abbeville plant.

**3.** This appeal relates solely to the tort liability of Milliken and Milliken employees.

**4.** S.C.Code Ann. §§ 42–1–10 to 42–19–50 (1985 & Supp.2003).

■ Whether or not an employer-employee relationship exists is a jurisdictional question. *Nelson v. Yellow Cab Co.,* 349 S.C. 589, 564 S.E.2d 110 (2002); *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995); *see also Lake v. Reeder Constr. Co.,* 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998) (existence of employer-employee relationship is jurisdictional question; injured worker's employment status, as it affects jurisdiction, is matter of law for decision by court and includes findings of fact which relate to jurisdiction). The determination of whether a worker is a statutory employee is jurisdictional and therefore the question on appeal is one of law. *Harrell v. Pineland Plantation, Ltd.,* 337 S.C. 313, 523 S.E.2d 766 (1999); *Glass v. Dow Chem. Co.,* 325 S.C. 198, 482 S.E.2d 49 (1997). As a result, this Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence. *Harrell,* 337 S.C. at 320, 523 S.E.2d at 769; *Glass,* 325 S.C. at 202, 482 S.E.2d at 51; *see also Bridges v. Wyandotte Worsted Co.,* 243 S.C. 1, 132 S.E.2d 18 (1963), *overruled in part on other grounds by Sabb v. South Carolina State Univ.,* 350 S.C. 416, 567 S.E.2d 231 (2002) (existence or absence of employment relationship is jurisdictional fact which court must determine based on review of all evidence in record).

■ Where the issue involves jurisdiction, the appellate court can take its own view of the preponderance of the evidence. *Nelson,* 349 S.C. at 594, 564 S.E.2d at 112. It is South Carolina's policy to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act. *Dawkins,* 341 S.C. at 439, 534 S.E.2d at 703.

■ The court may consider affidavits on a question of law in a jurisdictional motion without converting the motion into one for summary judgment. *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999). The proper procedure for raising lack of subject matter jurisdiction prior to trial is to file a motion to dismiss pursuant to Rule 12(b)(1), SCRCP, rather than a motion for summary judgment pursuant to Rule 56, SCRCP. *Woodard v. Westvaco Corp.,* 319 S.C. 240, 460 S.E.2d 392 (1995), *overruled on other grounds by Sabb v.*

*South Carolina State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002). If a party files a Rule 56 motion for summary judgment on the ground of lack of subject matter jurisdiction, the trial court should treat the motion as if it were a Rule 12(b)(1) motion to dismiss. *Id.*

## *LAW/ANALYSIS*

### I. Exclusivity Provision of the Workers' Compensation Act

 The Estate argues the trial judge erred in finding the Estate's action was barred by the exclusivity provision of the South Carolina Workers' Compensation Act (the Act). We disagree.

The Act contains an "exclusivity provision." *See Sabb v. South Carolina State Univ.*, 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002) ("Because Sabb's claims, as employee of University, arose out of and in the course of her employment, the Workers' Compensation Act . . . provides the exclusive remedy for her."). This exclusivity provision is found at section 42–1–540:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept *compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.*

S.C.Code Ann. § 42–1–540 (1985) (emphasis added).

 The Workers' Compensation Act is the exclusive remedy against an employer for an employee's work-related accident or injury. *Fuller v. Blanchard*, 358 S.C. 536, 595 S.E.2d 831, 833 (2004); *see also Strickland v. Galloway*, 348 S.C. 644, 646, 560 S.E.2d 448, 449 (Ct.App.2002) ("In circumstances in which the South Carolina Workers' Compensation Act covers an employee's work-related accident, the Act provides the exclusive remedy against the employer."). The exclusivity provision of the Act precludes an employee from maintaining a tort action against an employer where the

employee sustains a work-related injury. *Tatum v. Medical Univ. of South Carolina*, 346 S.C. 194, 552 S.E.2d 18 (2001).

"The exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee." *Strickland*, 348 S.C. at 646, 560 S.E.2d at 449. The immunity is conferred not only on the direct employer, but also on co-employees. *Id.*

Under the exclusivity provision, a Workers' Compensation action is the exclusive means to determine claims against an individual's employer for work-related accidents and injuries. In the instant case, however, Edens was *not* a Milliken employee. Rather, he was employed by Sanders Brothers, and was thus a Milliken subcontractor.

Coverage under the Act is generally dependent on the existence of an employer-employee relationship. *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 41 S.E.2d 872 (1947); *Tillotson v. Keith Smith Builders*, 357 S.C. 554, 593 S.E.2d 621 (Ct.App.2004). There are certain statutory exceptions to this general rule. One of these exceptions is found in § 42–1–400 of the Act which, under some circumstances, imposes liability on an employer or business owner for the payment of compensation benefits to a worker not directly employed by the employer. The Act specifically provides statutory employees are included within the scope of the Act:

> When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42–1–400 (1985).

Three tests are applied in determining whether the activity of an employee of a subcontractor is sufficient to

make him a statutory employee within the meaning of § 42–1–400:

(1) is the activity an important part of the owner's business or trade;

(2) is the activity a necessary, essential, and integral part of the owner's trade, business, or occupation; or

(3) has the identical activity previously been performed by the owner's employees?

*Boone v. Huntington and Guerry Elec. Co.*, 311 S.C. 550, 430 S.E.2d 507 (1993); *Riden v. Kemet Elec. Corp.*, 313 S.C. 261, 437 S.E.2d 156 (Ct.App.1993); *see also Meyer v. Piggly Wiggly No. 24, Inc.*, 338 S.C. 471, 473, 527 S.E.2d 761, 763 (2000) (holding there are three tests used to determine whether an employee was "engaged in an activity that is part of the owner's trade, business, or occupation"); *Smith v. T.H. Snipes and Sons, Inc.*, 306 S.C. 289, 411 S.E.2d 439 (1991) (listing the three factors of the statutory employee test); *Revels v. Hoechst Celanese Corp.*, 301 S.C. 316, 318, 391 S.E.2d 731, 732 (Ct.App.1990) (finding the test used to determine if one is a statutory employee is "whether or not [the work] being done is or is not a part of the general trade, business or occupation of the owner."). If the activity at issue meets even one of these three criteria, the worker qualifies as the statutory employee of the owner. *Olmstead v. Shakespeare*, 354 S.C. 421, 581 S.E.2d 483 (2003). Any doubts as to a worker's status should be resolved in favor of including him or her under the Workers' Compensation Act. *Riden*, 313 S.C. at 263, 437 S.E.2d at 158.

Michael McGill, Edens' supervisor at Sanders Brothers, was assigned to Milliken's Abbeville plant. McGill stated:

At the time of Mr. Edens' accident, Sanders' employees primarily assisted Milliken's maintenance associates when they requested assistance. On the morning of the accident, Mr. Edens was assisting Milliken associates, under their direction, with a modification of a dye vat in the dye package plant. Maintaining operations equipment in the dye package plant was an important and necessary part of Milliken's business at the Abbeville Plant. Mr. Edens, like other Sanders employees, assisted Milliken associates with various equipment maintenances and modifications through-

out the dye package plant. With regard to the dye vat modification in particular, Mr. Edens did not bring any specific or unique expertise to the project. He was there to assist in the work that had to be done that morning.

In his affidavit, Coy, the engineering services manager for the dye package area at Milliken's Abbeville plant, declared:

2. At the time of Mr. Edens' accident, Milliken used employees from Sanders Brothers, Inc. ("Sanders") to assist Milliken's maintenance associates on various machinery maintenance and installation projects throughout the dye plant. On the morning of the accident, February 10, 1998, Mr. Edens was assisting Milliken associates by helping to modify the door to a dye vat in the dye package plant.

3. The work assigned to Mr. Edens on the day of the accident in the dye vat area was neither special nor unique. He was asked to assist, and was under the direction of, Milliken associates when he performed this work. Milliken associates could have performed and were in fact also performing the work he was doing that morning, and had done similar work in the dye vat area previously without the assistance of Mr. Edens or other Sanders employees.

4. Maintaining operations equipment and machinery in the dye package plant and modifying the dye vats in the dye package plant to make them more productive were important and necessary parts of Milliken's business at the Abbeville plant. Making the dye vats productive was an integral aspect of the dye package plant operations. Therefore, the work done to the door of the dye vat at issue was an important part of Milliken's operations in Abbeville.

The record reveals that Edens' work on the dye vat project satisfies each of the three criteria which independently show that an employee of a subcontractor is a statutory employee under the Act. The Circuit judge found that Edens was Milliken's statutory employee on the date of the accident. In this appeal, no issue is raised in regard to the status of Edens as Milliken's statutory employee on the date of the accident.

Based on the three criteria articulated in *Meyer, Boone,* and *Smith,* and the conclusion of the Circuit judge, we affirm the finding that Edens was Milliken's statutory employee on the date of the accident.

If a worker is properly classified as a statutory employee, his sole remedy for work-related injuries is to seek relief under the Workers' Compensation Act. *Hancock v. Wal-Mart Stores, Inc.,* 355 S.C. 168, 584 S.E.2d 398 (Ct.App.2003). He may not maintain a negligence cause of action against his direct employer or his statutory employer. *Neese v. Michelin Tire Corp.,* 324 S.C. 465, 478 S.E.2d 91 (Ct.App.1996), *overruled on other grounds by Abbott v. The Limited, Inc.,* 338 S.C. 161, 526 S.E.2d 513 (2000). The exclusivity provision of the Act applies both to "direct" employees and to those termed "statutory employees" under § 42–1–400. *Carter v. Florentine Corp.,* 310 S.C. 228, 423 S.E.2d 112 (1992), *overruled on other grounds by Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994).

Accordingly, the Estate's sole recourse against the Respondents for Edens' accidental workplace death was a Workers' Compensation recovery.

## II. Intentional Tort Exception to the Act

The Estate contends it can pursue a negligence cause of action in this case based upon the intentional tort exception to the Act. We disagree.

An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego. *Cason v. Duke Energy Corp.,* 348 S.C. 544, 560 S.E.2d 891 (2002); *Dickert v. Metropolitan Life Ins. Co.,* 311 S.C. 218, 428 S.E.2d 700 (1993). Our Supreme Court declared:

> The only exceptions to the exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer (§ 42–1–540); (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego [*Dickert v. Met. Life Ins. Co.,* 311 S.C. 218, 428 S.E.2d 700 (1993)]; (3) where the tort is slander and the injury is to reputation [*e.g., Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 417 S.E.2d 538 (1992)]; or (4) where the Act specifically excludes certain occupations [S.C.Code Ann. §§ 42–1–350 through – 375 (1976 and Supp. 2000)].

*Cason,* 348 S.C. at 547 n. 2, 560 S.E.2d at 893 n. 2 (refusing to carve out additional exception to exclusivity provision, holding that the Act does not permit employees injured in a catastrophic explosion to pursue litigation against their employer outside the exclusive remedy provisions of the Act).

■ The intentional tort exception is created through a deliberate intent to injure:

The exception to the exclusivity provision is based upon the nature of the act that caused the injury—whether it was intentional or accidental. Only injuries caused by an "accident" are within the jurisdiction of the Commission. Intentional infliction of emotional distress is not an "accident." "[T]he employer will not be heard to allege that the injury was 'accidental' and therefore was under the exclusive provisions of the Workmen's Compensation Act, when he himself intentionally committed the act." 2A Larson, The Law of Workmen's Compensation § 68–11 (1989). **A common law cause of action will not be barred by the exclusivity provisions when the employer manifests a deliberate intent to injure the employee.** This exception is applicable to the intentional infliction of emotional distress. In *Stewart [v. McLellan's Stores Co.,* 194 S.C. 50, 9 S.E.2d 35 (1940)]*, we recognized that an employee can maintain a common law action for the employer's intentional assault and battery. We extend that rule to allow actions for the intentional infliction of emotional distress. As this is the only type of tort which is involved in this case, we express no opinion as to the application of the exception to other intentional torts.

*McSwain v. Shei,* 304 S.C. 25, 29–30, 402 S.E.2d 890, 892 (1991), *overruled on other grounds by Sabb v. South Carolina State Univ.,* 350 S.C. 416, 567 S.E.2d 231 (2002) (emphasis added).

■ In *Peay v. U.S. Silica Co.,* 313 S.C. 91, 437 S.E.2d 64 (1993), the South Carolina Supreme Court inculcated:

**It is well settled that a common law cause of action is not barred by section 42–1–540 if the employer acted with a deliberate or specific intent to injure the employee.** *McSwain v. Shei,* 304 S.C. 25, 402 S.E.2d 890 (1991) (intentional infliction of emotional distress); *Stewart v. McLel-*

*lan's Stores Co.*, 194 S.C. 50, 9 S.E.2d 35 (1940) (malicious assault and battery). *See also* 2A Larson's Workmen's Compensation Law § 68.10 (1993) (hereinafter "Larson's"). Peay argues that injuries which are "substantially certain" to result from an employer's act also should fall within the intentional injury exception to section 42–1–540. We disagree.

"Intent" is a state of mind about the consequences of an act. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts,* § 8 (5th ed. 1984 & Supp. 1988). In its most narrow sense, "intent" denotes an actor's specific desire to cause the consequences of his act. *See* Restatement (Second) of Torts § 8A (1965). However, "intent" may be construed more broadly to include consequences which are not desired. Where an actor knows that consequences are substantially certain to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. *Id.* and comment b. With these differing interpretations of "intent" in mind, we turn to the question whether the intentional injury exception to section 42–1–540 includes injuries that are substantially certain to result from an employer's act.

... **Giving the intentional injury exception to section 42–1–540 its most narrow construction, we find that only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of workers' compensation coverage.** *Accord* 2A Larson's, § 68.13. Consequently, we decline to follow North Carolina's adoption of the substantial certainty standard articulated in *Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222 (1991).

*Id.* at 93–94, 437 S.E.2d at 65–66 (footnote omitted and emphasis added). The standard articulated in *Peay* regarding employers "also would apply to injuries intentionally inflicted by a co-employee." *Id.* at 94 n. 1, 437 S.E.2d at 66 n. 1. Any exception to Workers' Compensation coverage must be narrowly construed. *Id.* at 94, 437 S.E.2d at 65.

In contrariety to the Estate's argument, *Peay* is precedential and controlling in regard to the case *sub judice.* Our Supreme Court, in *Cason v. Duke Energy Corp.,* 348 S.C. 544,

560 S.E.2d 891 (2002), buttressed, augmented, and maximized the efficacy of *Peay.*

In his treatise on Workers' Compensation law, Professor Larson academically analyzed the intentional tort exception and its restriction to instances when harm is specifically intended:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, **the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.**
>
> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, willfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.
>
> . . . .
>
> If these decisions seem rather strict, one must remind oneself that **what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.**

.

6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.03 (2002) (emphasis added and footnotes omitted).

The Estate cannot show Milliken, or any of Milliken's employees, had "a deliberate or specific intent to injure" Edens. *See Peay,* 313 S.C. at 94, 437 S.E.2d at 65–66 ("[O]nly those injuries inflicted by an employer [or co-employee] who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of workers' compensation coverage."). There is no evidence in the record that anyone affiliated with Milliken had any intention of harming Edens or any other individual. The Milliken employee who disconnected the safety mats did not do so with the intent to injure anyone. Rather, the mats were disabled because the repeated stopping of the robotic shuttle "aggravated" the shuttle operator. Further, the fact that, after the mats were disconnected, workers on the floor were warned whenever the shuttle passed nearby goes to prove a lack of intent by any of the Milliken staff to cause injury. In addition, the shuttle operator did not have a deliberate or specific intent to harm Edens, as he testified he was unaware Edens was in the dye vat area when the robotic shuttle was sent to the vat. We note the Estate's argument that it is entitled to apply the intentional tort exception is, at best, disingenuous, where a negligence cause of action was clearly pled in the amended complaint.

Moreover, in applying for and receiving a Workers' Compensation recovery, the Estate admitted that Edens' death resulted from an accident in the workplace. The language of the Commission's order states: "It appears that the deceased, Christopher J. Edens, ... on or about February 10, 1998 ... *sustained an injury by accident* arising out of and in the course of said employment which led to his death on that date." (emphasis added).

Based on these undisputed facts, the Circuit Court correctly determined the "intentional tort exception had no application" to the Estate's claims. The affidavits filed by the Estate did not address, much less contradict, the undisputed facts. **The Estate did not submit any evidence suggesting that anyone intended to harm or injure Edens or that an intentional tort occurred.** Concomitantly, the trial judge did not err in

concluding the Estate's action was barred by the Workers' Compensation Act.[5]

## CONCLUSION

Based upon the foregoing, the trial judge's order granting Milliken's motion for dismissal under Rule 12(b)(1), SCRCP, is **AFFIRMED.**[6]

HUFF and KITTREDGE, JJ., concur.

---

5. The Estate claims this Court should examine the findings of the Occupational Safety and Health Administration (OSHA) investigation conducted at the Milliken plant after Edens' death. We decline to address this argument as we are not empowered to create an exception to the exclusivity rule based upon post-accident conduct by an employer.

6. In light of our disposition of the Estate's issue regarding the exclusivity provision, we decline to address the issue as to the statute of limitations.