**John C. MONROE, Plaintiff,**

v.

**MONSANTO COMPANY and The Hale Mfg. Company, Defendants.**

Civ. A. No. 80–918–14.

United States District Court,
D. South Carolina,
Greenwood Division.

Jan. 15, 1982.

Marvin R. Watson, J. Kendall Few, Greenville, S.C., for plaintiff.

William W. Watkins, Columbia, S.C., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILKINS, District Judge.

This novel question of law in South Carolina arose from a personal injury action. It comes before me on Motion for Summary Judgment by both defendants. On the issue raised, the parties agree that there is no dispute over any material facts, and that only an issue of law is before the Court.

The complaint, filed March 18, 1980, asserts the following:

1. On May 21, 1978 while employed by Fovil Manufacturing Company (Fovil) at its plant near Abbeville, South Carolina, the plaintiff lost his left arm in a machine called a Gamble Cutter. (The complaint calls it a "Campbell Cutter.")

2. The Gamble Cutter was designed, built and placed in the Fovil plant by Monsanto and Hale.

3. Hale is a corporation affiliated or associated with Monsanto.

4. Before 1978, Hale operated the Abbeville plant where the plaintiff was subsequently injured.

5. At some time before plaintiff's injury, Hale sold or otherwise transferred the plant and Gamble Cutters to Fovil.

6. The Gamble Cutters were negligently and defectively designed by Monsanto and Hale and such defects were the proximate cause of the plaintiff's injury.

The Answer of the defendants is dated August 8, 1980 and contains four defenses:

1. A general denial.

2. Contributory negligence.

3. Assumption of the risk.

4. The action is barred by the South Carolina Workmen's Compensation Law.

The defendants' Motion for Summary Judgment is dated August 11, 1981, and is based solely on their fourth defense that the action is barred by the South Carolina Workmen's Compensation Law. The basis for the defendants' Motion is their claim that both Fovil and Hale are wholly owned corporate subsidiaries of Monsanto and that all three corporations are in essence a single entity. Therefore, the defendants reason that since plaintiff was entitled to benefits under the South Carolina Workmen's Compensation Act from Fovil, action against Monsanto and Hale is barred. S.C.Code § 42–1–540. Plaintiff does not oppose the Motion for Summary Judgment as to Monsanto but opposes it as to Hale.

In addition to the pleadings, the record upon which the Motion for Summary Judgment was made and argued by the parties contains the following:

1. Deposition of the plaintiff's expert witness, Melvin K. Richardson, dated March 20, 1981.

2. Plaintiff's deposition, dated March 20, 1981.

3. Affidavit of Paul W. Runge, President of Fovil, dated August 18, 1981, with exhibits including:

    (a) Fovil Corporate Organization Chart revised July 1, 1980.

    (b) Hale Corporate Organization Chart revised July 31, 1980.

    (c) Monsanto Corporate Organization Chart revised June 1, 1981.

    (d) Monsanto Textile Company Corporate Organization Chart dated April 1, 1981.

    (e) Patent of the Gamble Cutter issued October 30, 1973.

4. Affidavit of Glen McCollom, dated August _____, 1981. (The day in August is omitted. The affidavit was filed August 24, 1981.) Mr. McCollom is an employee of Hale familiar with the design of the Gamble Cutter.

5. Affidavit of J. W. Journey, President of Hale, dated August 21, 1981.

6. The following exhibits attached to plaintiff's brief dated August 24, 1981, filed in opposition to defendants' Motion for Summary Judgment:

    (a) South Carolina Industrial Commission notice of hearing dated September 6, 1979.

    (b) Fovil application for South Carolina Corporation Charter filed October 10, 1977.

    (c) Hale application for surrender of South Carolina Corporation Charter filed December 20, 1977.

    (d) Hale Delaware annual franchise tax report dated November 16, 1978.

    (e) Fovil Delaware annual franchise tax report dated February 18, 1979.

These constitute the record before the Court for summary judgment purposes. They contain the following relevant information:

A. *Plaintiff's deposition.*

(1) The plaintiff is 58 years of age and has lived in the Abbeville, South Carolina area since October of 1970. (Page 3, lines 15–16; page 5, lines 3–4.)

(2) He began his employment with Hale Manufacturing Company in October of 1970 and continued working there through April of 1973. (Page 10, lines 20–23; page 11, lines 5–7.)

(3) The first Gamble Cutter was installed at Hale in early 1973. There were two there when plaintiff left in April of that year. (Page 12, lines 23–24; page 13, lines 10–12.)

(4) After an absence of almost three years, plaintiff returned to Hale in February of 1976. At that time there were 12 Gamble Cutters installed. (Page 16, lines 22–24; page 17, lines 9–13; page 18, lines 2–5.)

(5) The transfer from Hale to Fovil took place in late 1977 or early 1978. (Page 19, line 24, through page 21, line 1.)

(6) The only changes plaintiff saw in the plant after the transfer were the change in the name of the plant from Hale to Fovil and the change in the name on his payroll check from Hale to Fovil. (Page 20, lines 1–9.)

(7) Plaintiff lost his left arm in the Gamble Cutter on May 21, 1978. (Page 22, lines 16–18.)

(8) Plaintiff applied for and received workmen's compensation benefits as an employee of Fovil. (Page 62, lines 8–23.)

B. *Affidavit of Paul W. Runge, President of Fovil.*

(1) Fovil was created in 1977 and is a wholly owned corporate subsidiary of Monsanto. (Page 1, ¶ 2–3.)

(2) Fovil has two plants, one in Abbeville, South Carolina and one in Foley, Alabama. (Page 2, ¶ 5.)

(3) The Abbeville plant was operated by Hale until October of 1977 when it was transferred to Fovil. (Page 4, ¶ 2.)

(4) Fovil processes textile goods (carpet fiber) for Monsanto. Monsanto retains title

to the goods and provides processing scheduling services for Fovil. (Page 2, ¶ 5–6.)

(5) Several Fovil executives are paid by Monsanto. Fovil files no independent annual report or independent federal corporate tax returns. Fovil receives operating capital from Monsanto and its operating and payroll funds are handled by Monsanto's accounting personnel. (Page 2, ¶ 11–13; page 4, ¶ 15.)

(6) Fovil's only assets consist of equipment conveyed to it by Monsanto and Hale at the time of Fovil's creation. (Page 4, ¶ 15.)

(7) The Gamble Cutter was invented by an employee of Hale. The patent is owned by Monsanto. The machine is manufactured and used within the Monsanto Company (presumably including its wholly owned corporate subsidiaries). (Page 4, ¶ 20.)

C. *Fovil Corporate Organization Chart, revised July 1, 1980. (Exhibit "A" to Paul W. Runge's Affidavit.)*

(1) Fovil is a Delaware corporation organized on August 29, 1977, with its principal office in Foley, Alabama.

(2) Fovil is qualified to do business in Alabama and South Carolina and has two plants, one in Foley, Alabama and one in Abbeville, South Carolina.

(3) Fovil holds its annual meeting the first Monday in April and its outstanding shares are owned by Monsanto.

(4) The principal activity of Fovil is shown as conversion of CF (carpet fiber) into nylon staple (a standard length of textile fiber).

(5) The following officers or directors of Fovil are also officers or directors of Hale or Monsanto:

(a) J. L. Tuley, currently Chairman of the Board of Fovil, is General Manager of the Manufacturing Division of Monsanto Textiles.

(b) F. H. Dayton, Director of Fovil, is Chairman of the Board of Hale and General Manager of the Commercial Department of Monsanto.

(c) C. A. Ross is currently Director of Fovil and is Director of Personnel for Monsanto Textiles.

(d) G. K. Oberhausen, Treasurer of Fovil, is a Director of Hale and Controller of Monsanto Textiles.

(e) F. R. Uible, Jr., Secretary of Fovil, is Secretary of Hale and Director of Law for Monsanto Textiles.

D. *Hale Corporate Organization Chart, revised July 31, 1980. (Exhibit "B" to Paul W. Runge's Affidavit.)*

(1) Hale is a Delaware corporation organized December 1, 1960, with its principal office in Putnam, Connecticut.

(2) Hale is qualified to do business in Connecticut where it has four plants, and in Georgia where it has one.

(3) Hale has its annual meeting the fourth Thursday in April and all outstanding shares are owned by Monsanto.

(4) The principal activity of Hale is processing of fibers and manufacture and marketing of fibers.

(5) The following officers or directors of Hale are also officers or directors of Fovil or Monsanto:

(a) F. H. Dayton, Chairman of the Board of Hale, is General Manager of the Commercial Department of Monsanto Textiles.

(b) H. R. Huff, Director of Hale, is Director of Commercial Administration of Monsanto Textiles.

(c) R. E. Burke, Director of Hale, is on the Corporate Administration Committee of Monsanto and is Group Vice-President and Managing Director of Monsanto Textiles.

(d) G. K. Oberhausen, Director of Hale, is a Director and Treasurer of Fovil and Controller of Monsanto Textiles.

(e) F. R. Uible, Jr., Secretary of Hale, is Secretary of Fovil and Director of Law for Monsanto Textiles.

E. *Monsanto Corporate Organization Chart, revised June 1, 1981. (Exhibit "C" to Paul W. Runge's Affidavit.)*

(1) R. E. Burke, a member of the Corporate Administration Committee of Monsanto, is a Director of Hale and Managing Director of Monsanto Textiles.

F. *Monsanto Textile Company Corporate Organization Chart, dated April 1, 1981. (Exhibit "D" to Paul W. Runge's Affidavit.)*

(1) J. W. Journey, President of Hale, reports to H. R. Huff, Director of Commercial Administration of Monsanto Textiles.

(2) P. W. Runge, President of Fovil, reports to J. L. Tuley, General Manager of the Manufacturing Division of Monsanto Textiles.

G. *Patent to the Gamble Cutter. (Exhibit "E" to Paul W. Runge's Affidavit.)*

(1) The Gamble Cutter was invented by James G. Gamble of Danielson, Connecticut and the rights under it assigned to Monsanto.

(2) The patent was applied for on June 5, 1972 and issued on October 30, 1973.

H. *Affidavit of Glen McCollom, dated August _____, 1981. Mr. McCollom is an employee of Hale familiar with the Gamble Cutter.*

(1) The Fovil plant in Abbeville was operated by Hale prior to October 1, 1977. (Page 1, ¶ 3.)

(2) Fovil receives fiber for processing from Monsanto. Fovil processes the fiber into carpet staple and returns the carpet staple to Monsanto. Monsanto retains title to the fiber and the processed carpet staple. (Page 2, ¶ 5.)

(3) The first Gamble Cutter was installed in the Hale plant in Abbeville in 1971.

(4) Glen McCollom has visited the plant on a regular basis since its transfer to Fovil to implement and approve changes in the machine.

I. *Affidavit of J. W. Journey, President of Hale, dated August 21, 1981.*

(1) Hale has been a wholly owned corporate subsidiary of Monsanto since 1968. All working capital is supplied by Monsanto.

Hale files no separate annual report or federal tax return.

(2) Monsanto underwrote the incorporation of Fovil.

(3) The Gamble Cutter is made and used solely within the Monsanto Company.

J. *Notice of Hearing of South Carolina Industrial Commission (Exhibit "A" to Plaintiff's Brief.)*

(1) Plaintiff's employer is listed as Fovil.

(2) There is no reference to Hale or Monsanto.

K. *Fovil's application for South Carolina Corporate Charter, filed October 10, 1977. (Exhibit "B" to Plaintiff's Brief.)*

(1) Fovil is a Delaware corporation incorporated on August 29, 1977, and is engaged in the business of synthetic fiber conversion.

(2) The name of the corporation is Fovil Manufacturing Company, Inc. There is no reference in the application for corporate charter to Fovil being affiliated in any way with Monsanto or Hale.

L. *Hale's application for surrender of its South Carolina Corporate Charter, filed December 27, 1977. (Exhibit "C" to Plaintiff's Brief.)*

(1) As of December 14, 1977, the date of the application, Hale represented to the Secretary of State of South Carolina that it was "no longer transacting business in South Carolina."

(2) There is no reference in this document to any affiliation between Hale and Monsanto or Fovil.

M. *Hale's Delaware Annual Franchise Tax Report, dated November 16, 1978. (Exhibit "D" to Plaintiff's Brief.)*

(1) The nature of Hale's business is described as processing man-made textile waste.

(2) There is no reference to any affiliation between Hale and Monsanto or Fovil.

N. *Fovil's Delaware Annual Franchise Tax Report, dated October 21, 1978. (Exhibit "E" to Plaintiff's Brief.)*

(1) The name of the company is shown as Fovil Manufacturing Company, Inc.

(2) The nature of Fovil's business is described as processing of synthetic fiber.

Based on the record as summarized above, it is apparent that:

1. Monsanto Company owns all outstanding capital stock of The Hale Manufacturing Company and Fovil Manufacturing Company, Inc. and designates both on its internal corporate organization charts as "subsidiaries." Neither Hale nor Fovil issued separate annual reports or filed separate federal corporate tax returns. There are a number of corporate services that are provided to both Hale and Fovil by Monsanto and there are a number of individuals who serve as officers or directors for Monsanto who also serve as officers or directors for Hale and/or Fovil. Notwithstanding these facts, both Hale and Fovil are separate corporate entities with separate Boards of Directors.

2. The Gamble Cutter was invented and designed by an employee of Hale. The Gamble Cutters located in the Fovil plant in Abbeville were installed in the plant while it was being operated by Hale beginning in 1971. Since that time, other employees of Hale have worked with design changes on the Gamble Cutter and have visited the plant on a regular basis to implement and approve changes on the Gamble Cutter.

3. Hale holds itself out to its employees and the general public as a separate corporate entity. Any affiliation between Hale and Monsanto is a well-guarded corporate secret, other than in internal corporate documents not generally available to its employees and the general public. Shortly after the Abbeville plant with its Gamble Cutters was transferred from Hale to Fovil on October 1, 1977, Hale represented to the Secretary of State of South Carolina that it was "no longer transacting business in South Carolina" and that it thereby surrendered its previously granted authority to transact business in this state.

4. Fovil holds itself out to its employees and the general public as a separate corporate entity with a separate corporate name. Any affiliation between Fovil and Monsanto is a well-guarded corporate secret, other than in internal corporate documents not generally available to its employees and the general public. The name upon its Abbeville plant and the payroll checks of its employees is Fovil. Under these circumstances, it has led its employees to believe that they are employees of a separate and distinct corporate entity. Fovil has taken advantage of whatever advantages are available to it under the laws of South Carolina and the United States as a separate corporation with a separate and distinct corporate identity.

5. At the time of plaintiff's injury on May 21, 1978, he was an employee of Fovil Manufacturing Company, Inc. At such time, he was not an employee of Monsanto or Hale.

## DISCUSSION

A corporation is defined as an artificial person or legal entity created by or under the authority of the laws of a state or nation, having a corporate name by which it may make contracts, sue or be sued and operate generally as a separate entity within the scope of the purposes for which it was created. *See Black's Law Dictionary,* page 307 (5th Ed., 1977); 18 C.J.S. *Corporations* § 1, pages 366–367; 9A *Words & Phrases,* pages 413–489. As such, it is an entirely separate legal entity distinct from its directors, officers, employees and shareholders. 9A *Words & Phrases,* pages 443–448.

A subsidiary corporation is defined as a corporation in which another corporation (the parent corporation) owns at least a majority of the outstanding shares and thus has control. *Black's Law Dictionary, supra,* page 1280; 40 *Words & Phrases,* pages 748–749. A wholly owned subsidiary is one in which the parent corporation owns all outstanding capital stock. Under the South Carolina Business Corporation Act, there are specific provisions under which a subsidiary corporation can be merged into the parent corporation and under which the merged or consolidated corporations cease to have an independent existence and be-

come a single corporation. *See §§ 33–17–50 and 33–17–60* of the South Carolina Code. The same provisions are available to both domestic and foreign corporations. *See §* 33–17–70 of the South Carolina Code. Until this is done, however, both the parent corporation and the subsidiary corporation continue to maintain a separate and independent existence. *See International Order of Twelve Knights and Daughters of Tabor v. Fridia,* 91 S.W.2d 404 (Tex.Civ.App., 1936), cited in 40 *Words & Phrases, supra,* page 748. *See also Gordon v. Hollywood-Beaufort Package Corp.,* 213 S.C. 438, 49 S.E.2d 718, 720 (1948) and *Brown v. Moorhead Oil Co.,* 239 S.C. 604, 124 S.E.2d 47, 50 (1962).

"Ordinarily, two or more corporations are separate and distinct identities, although the same individuals are the incorporators of, . . . *and although such corporations may have the same persons as officers . . . .*" (emphasis added) 18 C.J.S. *Corporations* § 5, page 374.

There are benefits to be derived by the parent corporation maintaining a separate identity from that of the subsidiary, included among them is the general rule that the parent corporation is not liable for the contracts or torts of its subsidiary. *See* 19 Am.Jur.2d *Corporations* § 716 and the following annotations: "Liability of Corporation for Contracts of Subsidiary," 38 A.L.R.3d 1102–93 (1971); "Liability of Corporation for Torts of Subsidiary," 7 A.L.R.3d 1343–84 (1966). Having retained whatever benefits may be available to themselves as separate and distinct corporations, associated corporations may be estopped to deny their separate existence. *See generally* 18 C.J.S. *Corporations* §§ 105–115.

"Persons holding themselves out as a corporation and contracting or dealing as such with third persons are estopped to deny corporate existence in a proceeding involving such contract or dealing." 18 C.J.S. *Corporations* § 110(a), Headnote, page 509.

There are three cases involving an application of South Carolina workmen's compensation law which are fairly close in point. They are, in chronological order, as follows:

1. *Gordon v. Hollywood-Beaufort Package Corp.,* 213 S.C. 438, 49 S.E.2d 718 (1948).

2. *Brown v. Moorhead Oil Co.,* 239 S.C. 604, 124 S.E.2d 47 (1962).

3. *Strickland v. Textron, Inc.,* 433 F.Supp. 326 (D.S.C.1977).

In *Gordon v. Hollywood-Beaufort Package Corp., supra,* the plaintiff was injured in the course of his employment with Hollywood-Beaufort Package Corporation. He applied for workmen's compensation benefits under the South Carolina Workmen's Compensation Act. The only question was whether Hollywood-Beaufort Package Corporation was subject to the Act at the time of the injury. At that time (1948), the Act exempted employers engaged in the business of manufacturing containers. Hollywood-Beaufort Package Corporation was a wholly owned subsidiary of Leigh Banana Case Company which was engaged in the business of manufacturing containers. Hollywood-Beaufort Package Corporation processed a component for these containers which it supplied to Leigh Banana Case Company. When the employer attempted to defeat the plaintiff's rights to workmen's compensation benefits by claiming application of this statutory exemption, the Industrial Commission, the Circuit Court and eventually the Supreme Court of South Carolina held that Leigh Banana Case Company and its wholly owned subsidiary Hollywood-Beaufort Package Corporation were separate and distinct corporations. Among the factors considered significant by the Supreme Court in reaching this conclusion was the fact that Hollywood-Beaufort Package Corporation hired and paid its own employees.

"The mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, . . . or create the relationship of principal and agent, or representative, or alter ego between the two." *Gordon v. Hollywood-Beaufort Package Corp.,* 213 S.C. 438, 444, 49 S.E.2d 718, 720 (1948).

In *Brown v. Moorhead Oil Company*, 239 S.C. 604, 124 S.E.2d 47 (1962), the plaintiff was injured in the course of his employment with Crown Royal Service, Inc., a company engaged in the business of recapping tires which was not subject to the South Carolina Workmen's Compensation Act. Crown Royal was wholly owned by Albert Moorhead who was also the sole owner of Moorhead Oil Company, a company engaged in the sale and distribution of petroleum products which was subject to the Workmen's Compensation Act. The plaintiff filed for workmen's compensation benefits, claiming that "... Crown Royal Service was a corporation in name only and in reality was a part of the business operations of the Moorhead Oil Company." 239 S.C. at 607, 124 S.E.2d at 49. The Industrial Commission awarded compensation and the Circuit Court affirmed. On appeal, the Supreme Court of South Carolina reversed, holding that the two corporations were separate and distinct corporations.

In reaching this conclusion, the Supreme Court of South Carolina considered the following facts to be significant:

1. The two companies were engaged in different business activities, one recapping tires and one distributing petroleum products.

2. The plaintiff worked at Crown Royal's place of business, was carried as an employee of Crown Royal on its payroll records, and his wages were paid by payroll checks of Crown Royal.

3. Although Albert Moorhead owned and generally supervised the management of both corporations, their business was transacted from separate locations under separate managers and their separate legal identities were preserved.

4. Although the books of both corporations were kept by the same persons in the offices of Moorhead Oil Company, separate books, bank accounts and payroll records were kept for each.

5. Separate tax returns were filed for each corporation.

In *Strickland v. Textron, Inc.*, 433 F.Supp. 326 (D.S.C.1977), the plaintiff was injured in the course of her employment at the Talon Division of Textron, Inc. After receiving workmen's compensation benefits as an employee of Talon, she brought suit against Textron, Inc. alleging that Textron had caused her injury by negligently designing the machine which caused her injury. Textron moved for summary judgment on the ground that Textron was the employer of the plaintiff and, therefore, suit against it "at common law or otherwise" was barred by S.C.Code § 42–1–540. The motion for summary judgment was granted by Judge Chapman who concluded that Talon was not a separate and distinct corporate entity but was, in fact, a division of Textron, Inc. In reaching this conclusion, Judge Chapman found the following facts to be significant:

1. The name of the plaintiff's employer was Talon Division of Textron, Inc. rather than Talon, Inc. and, therefore, the employee was not misled as to the identity of her employer. 433 F.Supp. 329, left column, first paragraph, citing 1A, Larson, *Workmen's Compensation Law* § 48.00 (1976); *Chavis v. Watkins*, 256 S.C. 30, 180 S.E.2d 648, 650 (1971); and *Holloway v. G. O. Cooley & Sons*, 208 S.C. 234, 37 S.E.2d 666, 670–71 (1946).

2. The Talon Division of Textron, Inc. did not maintain a separate corporate identity. 433 F.Supp. 327–328, Headnote # 1. *See generally West Digest*, Workmen's Compensation, Key # 215.

3. Talon Division of Textron, Inc. had no separate Board of Directors. 433 F.Supp. 327–328, Headnote # 1.

4. The Talon Division of Textron, Inc. did not file separate tax returns. 433 F.Supp. 327–328, Headnote # 1.

■ When these three cases are considered together, it readily appears that there are eight important factors that the courts considered in reaching a determination as to whether the two related businesses in question should be considered as separate and distinct corporations for workmen's compensation purposes:

1. *Did the two businesses maintain separate corporate identities?* The answer here is yes. Both Hale and Fovil have filed separate applications and reports with governmental agencies in South Carolina and Delaware. At the time of the plaintiff's injury, Hale was not authorized to do business in South Carolina and had represented to the Secretary of State of South Carolina that it was no longer transacting business in this state.

2. *Did the two businesses maintain separate Boards of Directors?* Again, the answer is yes. Although there are two men (F. H. Dayton and G. K. Oberhausen) who sit on both Boards, the two Boards are separate and distinct. Fovil holds its annual meeting the first Wednesday in April, presumably in Foley, Alabama. Hale holds its annual meeting the fourth Thursday in April, presumably in Putnam, Connecticut (See Exhibits "A" and "B" to Paul W. Runge's Affidavit.)

3. *Did the two businesses transact business from different locations under different managers?* Yes. Fovil operates plants in Abbeville, South Carolina and Foley, Alabama. Hale operates four plants in Connecticut and one at Cedartown, Georgia. The only person who serves as an officer (as opposed to a director) of both is F. R. Uible, Jr., Secretary to both Fovil and Hale. (See Exhibits "A" and "B" to Paul W. Runge's Affidavit.)

4. *Did the two businesses hire and pay their own employees?* Yes. After the transfer from Hale to Fovil, the plaintiff and other ex-employees of Hale continued their employment with Fovil. Other than this, there is no indication in the record that Hale had any connection with the hiring of employees of Fovil after the transfer. According to the plaintiff's deposition, he was paid after the transfer with separate payroll checks of Fovil. (See plaintiff's deposition, page 20, lines 4–9.)

5. *Did the two corporations hold themselves out to their employees as two separate entities?* Yes. After the transfer, the name of the plant was changed from Hale to Fovil. (Plaintiff's deposition, page 19, line 22, through page 20, line 3.) There is no indication in the record that Fovil or Hale ever disclosed any relationship between the two corporations to their employees.

6. *Did the two corporations engage in different business activities?* Yes. Fovil's business activity is restricted to processing of continuous fiber into carpet staple for Monsanto. It does not engage in any way in the manufacture of fabrics or in the marketing of the finished product. (Paul W. Runge's Affidavit, ¶¶ 5–6.) Hale, on the other hand, is engaged in the "processing of fibers and *manufacture and marketing of fabrics.*" (Exhibit "B" to Paul W. Runge's Affidavit.)

7. *Did the two corporations maintain separate books, bank accounts and payroll records?* Yes. Fovil maintains a separate payroll account. All other funds are handled through Monsanto's accounting center in Greenville. (Paul W. Runge's Affidavit, ¶13.) All of Hale's capital is supplied by Monsanto but there is no indication that the books of both are kept at a central location. (J. W. Journey's Affidavit, ¶¶9–10.) The two corporations maintain separate treasurers. The Treasurer of Fovil is G. K. Oberhausen with Assistant Treasurers J. M. Palecek and A. D. Harris. The Treasurer and Controller of Hale is B. O. Smith. (See Exhibits "A" and "B" to Paul W. Runge's Affidavit.)

8. *Did the two corporations file separate tax returns?* No. This is the only one of these eight important questions which can be answered favorably to the position taken by the defendant Hale in this case.

■ Although there are undoubtedly other factors which are or may be relevant to a determination of this issue in a given case, these eight are significant here. From them, the conclusion is inescapable that Fovil and Hale are two separate and distinct corporate entities and that the employer of the plaintiff at the time of his injury on May 21, 1978, within the meaning of South Carolina Code § 42–1–540 was Fovil Manufacturing Company, Inc. and not The Hale Manufacturing Company.

## CONCLUSIONS OF LAW

1. The employer of the plaintiff at the time of his injury within the meaning of the South Carolina Workmen's Compensation Act was the Fovil Manufacturing Company, Inc.

2. At the time of plaintiff's injury, no employer-employee relationship existed between the plaintiff and The Hale Manufacturing Company.

3. Hale and Fovil are estopped to deny their separate corporate identities.

4. Plaintiff's alleged cause of action against The Hale Manufacturing Company is not barred by the plaintiff's receipt of workmen's compensation benefits under the Workmen's Compensation Act.

The plaintiff did not oppose defendants' motion for summary judgment as to Monsanto and, therefore, such motion is granted as to Monsanto only. The motion as to Hale is denied. It appears that the question presented in Hale's motion for summary judgment is the controlling issue in this case and that its final determination will in all probability terminate the litigation. The question involved is a controlling question of law as to which there is or may be substantial grounds for difference of an opinion. An immediate appeal from this order under the provisions of 28 U.S.C. § 1292(b) is indicated. During the pendency of an application for an immediate appeal under this section, further proceedings are stayed.

AND IT IS SO ORDERED.