686 S.E.2d 689

Thelma M. POCH, as Personal Representative for
the Estate of Kenneth O. Poch, Appellant,

v.

BAYSHORE CONCRETE PRODUCTS/SOUTH CAROLINA,
INC., Bayshore Concrete Products Corporation, Tidewater
Skanska Group, Inc., and Tidewater Skanska, Inc., Defendants,

of whom Bayshore Concrete Products/South Carolina,
Inc., and Bayshore Concrete Products
Corporation are the Respondents.

Kevin Key and Sandra Key, Appellants,

v.

Bayshore Concrete Products/South Carolina, Inc., Bayshore
Concrete Products Corporation, Tidewater Skanska Group,
Inc., and Tidewater Skanska, Inc., Defendants,

of whom Bayshore Concrete Products/South Carolina,
Inc., and Bayshore Concrete Products
Corporation are the Respondents.

Thelma M. Poch, as Personal Representative for the Estate
of Kenneth O. Poch and Julius Poch, Appellant,

v.

Bayshore Concrete Products/South Carolina, Inc., Bayshore
Concrete Products Corporation, Tidewater Skanska Group,
Inc., and Tidewater Skanska, Inc., Defendants,

of whom Bayshore Concrete Products/South Carolina,
Inc., and Bayshore Concrete Products
Corporation are the Respondents.

No. 4617.

Court of Appeals of South Carolina.

Heard April 22, 2009.
Decided Sept. 9, 2009.
Rehearing Denied Dec. 7, 2009.

14

16

Christine Companion Varnado, John Kuhn, and Frank X. Duff, all of Charleston, and Gerald E. Loftstead, III, of Wheeling, WV, for Appellants.

Samuel R. Clawson, Timothy A. Domin, and Barrett R. Brewer, all of Charleston, for Respondents.

LOCKEMY, J.

Thelma Poch, as the Personal Representative for the Estate of Kenneth O. Poch and Kevin and Sandra Key appeal the circuit court's order of dismissal of their causes of actions

18

against Bayshore Concrete Products South Carolina, Inc. (Bayshore SC), and Bayshore Concrete Products Corporation, Tidewater Skanska Group, Inc., and Tidewater Skanska, Inc. (Bayshore Corp) following a finding all claims were barred by the exclusivity provision of the Workers' Compensation Act. We affirm.

## FACTS

Bayshore Corp is a Virginia corporation which is in the business of manufacturing pre-cast concrete products for use in construction projects. Bayshore SC is a South Carolina corporation which is a wholly owned subsidiary of Bayshore Corp and is also in the business of manufacturing precast concrete products for use in construction projects. After securing a bid to supply pre-cast concrete forms for use in the Carolina Bays Parkway project in Horry County, Bayshore Corp formed Bayshore SC, to effectively act as a remote casting yard to fulfill the bid for the Carolina Bays project locally in South Carolina. Bayshore Corp executed a lease for a South Carolina factory site and purchased equipment on behalf of Bayshore SC so that Bayshore SC could produce the concrete forms necessary to fulfill the bid. Bayshore SC paid the rent for the leased property, and Bayshore SC used the equipment to produce the concrete forms for the Carolina Bays Project. Under the terms of the lease, Bayshore SC was required to return the work site to its original condition.

While Bayshore SC was in the final stages of finishing its Carolina Bays project, it contracted with Job Place to hire workers for the site cleanup and equipment dismantling. Job Place had previously leased several employees of Personnel Resources of Georgia (Personnel Resources), and Job Place signed a contract with Personnel Resources on June 13, 2002. Job Place provided Bayshore SC with approximately ten workers to help with the project, including Kevin Key and Kenneth Poch. During the completion of the casting removal job, Poch and Key were involved in a work related accident when the trench where they were working caved in. Poch died as a result of the accident, and Key was severely injured. When the accident occurred on June 6, 2002, Key and Poch worked directly with Larry Lenart, a Bayshore SC supervisor.

After the accident, Poch's Estate and Key received workers' compensation benefits through Job Place.

After receiving workers' compensation benefits, Poch's Estate and Key sued Bayshore Corp and Bayshore SC. Specifically, Thelma Poch, Kenneth's mother, filed a wrongful death and survival action, alleging negligence, gross negligence, professional negligence, breach of a professional duty, and premises liability. Kevin and Sandra Key filed a personal injury and loss of consortium action and also alleged negligence, gross negligence, professional negligence, breach of a professional duty, and premise liability. In their answer, Bayshore Corp and Bayshore SC claimed Kenneth Poch and Kevin Key were statutory employees of both the parent and the subsidiary. In an amended complaint, Thelma Poch and the Keys added a cause of action for breach of contract accompanied by fraud and negligent and/or intentional misrepresentation and/or deceit.

Bayshore Corp and Bayshore SC then moved for summary judgment and alternatively moved to dismiss for lack of subject matter jurisdiction. Specifically, Bayshore Corp and Bayshore SC requested a hearing to determine workers' compensation exclusivity jurisdiction. On April 19, 2007, the Honorable Steven H. John issued an order confirming the agreement of the parties to schedule a hearing date for the motions hearing. In his order, Judge John noted the parties agreed to a half day hearing, that the presentation of evidence would be by way of affidavits, deposition testimony, and applicable records. Further, the order allowed both parties to submit memoranda of law prior to the May 31, 2007 hearing.

Prior to the May 31 hearing, Appellants filed motions to exclude affidavits of Keith Colonna, Larry Lenart, and Vernon Dunbar. After a hearing on June 1, 2007, the circuit court addressed Bayshore's motions and included several factual findings. The circuit court determined Bayshore Corp and Bayshore SC were immune from civil suit under the workers' compensation exclusivity provisions. Specifically, the circuit court found: (1) Poch and Key were leased employees, solely performing the work of Bayshore Corp and Bayshore SC at the time of this accident; (2) Bayshore SC was a wholly owned subsidiary of Bayshore Corp formed for the purpose of filling

a bid secured by Bayshore Corp to supply concrete forms to the Carolina Bays project. Bayshore SC was the special employer of Appellants and, because Bayshore SC was performing the work of Bayshore Corp both parent and subsidiary were entitled to immunity pursuant to worker's compensation exclusivity; (3) under the subcontractor analysis, both Bayshore SC and Bayshore Corp were entitled to workers' compensation exclusivity; and (4) Bayshore SC and Bayshore Corp were statutory employers of Poch and Key because Appellants were performing the work of Bayshore SC and Bayshore Corp In three separate orders the circuit court denied Appellants' motion to exclude the affidavits.

The circuit court found Appellants' reliance on section 42-5-40 of the South Carolina Code (Supp.2007) for the proposition that Bayshore SC and Bayshore Corp did not secure worker's compensation coverage and were not entitled to immunity was misplaced. Specifically, the circuit court noted section 42-5-40 only concerns the ability of an upstream employer to shift the burden of worker's compensation coverage onto the state uninsured fund and explicitly cannot be applied to prevent an employer from benefitting from worker's compensation exclusivity. Accordingly, the circuit court dismissed Bayshore SC and Bayshore Corp from this case with prejudice after finding it lacked subject matter jurisdiction to hear the action.

Thereafter, Appellants filed a Rule 59(e) motion. In their motion, Appellants asked the circuit court to reconsider several factual findings and argued the circuit court erred in finding Poch and Key were employees of both Bayshore SC and Bayshore Corp and that both parent and subsidiary had workers' compensation insurance. Poch and Key argued the circuit court erred in finding Bayshore SC and Bayshore Corp were entitled to workers' compensation exclusivity because Poch and Key were (1) special or borrowed employees; or (2) statutory employees because neither Job Place nor Bayshore SC ever transferred certain documentation per statute. Additionally, Appellants argued Bayshore SC fraudulently misrepresented the work that it required the temporary employees to perform, the elements of fraud were met, and no meeting of the minds was reached between the parties. Appellants maintained Bayshore SC and Bayshore Corp are separate entities and should be treated separately for purposes of workers'

compensation coverage. Appellants argued Bayshore Corp did not own the work site where the injury occurred and thus the circuit court erred in concluding both Bayshore SC and Bayshore Corp were entitled to exclusivity under the subcontractor analysis. Appellants argued the circuit court erred in finding Bayshore Corp was Poch and Key's statutory employer. The circuit court did not specifically rule on Appellants' Rule 59(e) arguments but generally denied their motion for reconsideration. This appeal follows.

## STANDARD OF REVIEW

The existence of the employer-employee relationship is a jurisdictional question and one of law. *Porter v. Labor Depot*, 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct.App.2007). When deciding questions of law, this court has the power and duty to review the entire record and decide the jurisdictional facts in accord with its view of the preponderance of the evidence. *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009); *Harrell v. Pineland Plantation, Ltd.*, 337 S.C. 313, 320, 523 S.E.2d 766, 769 (1999). It is the policy of South Carolina courts to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act. *Hill v. Eagle Motor Lines*, 373 S.C. 422, 429, 645 S.E.2d 424, 427 (2007); *see also Wilkinson*, 382 S.C. at 300, 676 S.E.2d at 702 (indicating the court's sensitivity "to the general principle sanctioned by the Legislature that workers' compensation laws are to be construed liberally in favor of coverage").

## LAW/ANALYSIS

The essential issue in this appeal is whether the circuit court can exercise subject matter jurisdiction over Bayshore Corp and Bayshore SC. The Estate and Key present several theories under which the circuit court could exercise jurisdiction. For the reasons set forth below, we believe Appellants' only remedy was workers' compensation benefits.

### WORKERS' COMPENSATION EXCLUSIVITY

"Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the

proceedings in question belong." *Sabb v. S.C. State Univ.,* 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002). While the circuit court has subject matter jurisdiction over tort claims, certain cases may be taken from the circuit court's original jurisdiction by the General Assembly. *Id.* at 423, 567 S.E.2d at 234. The General Assembly has vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over an employee's work-related injuries. *Id.* The South Carolina Workers' Compensation Act contains an "exclusivity provision." *Edens v. Bellini,* 359 S.C. 433, 441, 597 S.E.2d 863, 867 (Ct.App.2004). Pursuant to this provision, the Act is the exclusive remedy for an employee's work-related accident or injury, and the exclusivity provision precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury. *Id.* at 441–42, 597 S.E.2d at 867–68. "The exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee." *Id.* at 442, 597 S.E.2d at 868 (citing *Strickland v. Galloway,* 348 S.C. 644, 646, 560 S.E.2d 448, 449 (Ct.App.2002)).

Specifically, the exclusivity provision states:

The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

*Provided, however,* this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against another subcontractor or his employees when both subcontractors are hired by a common employer.

S.C.Code Ann. § 42–1–540 (1985).

In *Cason v. Duke Energy Corp.,* the South Carolina Supreme Court expressed only four exceptions to the exclusivity provision:

(1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. 348 S.C. 544, 548 n. 2, 560 S.E.2d 891, 893 n. 2 (2002) (internal citations omitted).

## I. Bayshore SC's Immunity[1]

Appellants maintain the circuit court erred in finding Bayshore SC was entitled to immunity under the Act and present several theories for this assertion.

### A. Statutory Employer Status

■ In support of this assertion, Appellants argue Bayshore SC should not take advantage of the statutory employer status because it failed to collect insurance documentation when Appellants were engaged to performed work as required under section 42–1–415 of the South Carolina Code (Supp. 2008).

Respondents assert Bayshore SC is the statutory employer of Appellants and entitled to immunity. Respondents maintain Bayshore SC was the owner of the business enterprise and was statutorily required to provide workers' compensation to the employees of its subcontractors. In support of their assertion, Respondents point to three tests articulated in *Bailey v. Owen*, 298 S.C. 36, 39, 378 S.E.2d 63, 64 (Ct.App. 1989), *rev'd on other grounds, Bailey v. Owen*, 301 S.C. 399, 392 S.E.2d 186 (1990).

Here, the circuit court found Appellants' documentation argument was misplaced because the referenced code section 42–5–40 only concerns the ability of an upstream employer to shift the burden of workers' compensation coverage onto the state uninsured fund and explicitly cannot be applied to prevent an employer from benefitting from workers' compensa-

---

1. We first address whether Bayshore SC has tort immunity under the Act. Next, we discuss whether Bayshore Corp could piggyback on Bayshore's immunity as the parent company. Finally, we address Appellants' evidentiary issues.

tion exclusivity. However, in Appellants' brief they reference section 42–1–415 of the South Carolina Code to support their assertion that Bayshore SC should not be allowed to take advantage of the statutory employer status.

Pursuant to section 42–1–415(B):

*To qualify for reimbursement under this section,* the higher tier subcontractor, contractor, or project owner must collect documentation of insurance as provided in subsection (A) on a standard form acceptable to the commission. The documentation must be collected at the time the contractor or subcontractor is engaged to perform work and must be turned over to the commission at the time a claim is filed by the injured employee.

(emphasis added). As the circuit court found, we find Appellants' argument has no merit because this section concerns only whether a higher tier subcontractor, contractor, or project owner can qualify for reimbursement from the Uninsured Employer's Fund. Therefore, we find this section has no bearing on whether Bayshore SC or Bayshore Corp can take advantage of the statutory employer status.

■■■■■ Furthermore, we find the circuit court properly concluded Bayshore SC was Appellants' statutory employer. "The concept of statutory employment is designed to protect the employee by assuring workmen's compensation coverage by either the subcontractor, the general contractor, or the owner if the work is a part of the owner's business." *Parker v. Williams & Madjanik, Inc.,* 275 S.C. 65, 72, 267 S.E.2d 524, 528 (1980). Pursuant to section 42–1–410 of the South Carolina Code (1985):

When any person, in this section and §§ 42–1–420 to 42–1–450 referred to as "contractor," contracts to perform or execute any work for another person which is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any of the work undertaken by such contractor, the contractor shall be liable to pay to any workman employed in the work any compensation under this Title

which he would have been liable to pay if that workman had been immediately employed by him.

In determining whether a worker is a statutory employee, our courts consider the following three factors: "(1) whether the activity is an important part of the trade or business, (2) whether the activity is a necessary, essential and integral part of the business, and (3) whether the identical activity in question has been performed by employees of the principal employer." *Bailey*, 298 S.C. at 39, 378 S.E.2d at 64 (Ct.App.1989). As in *Bailey*, we find Bayshore SC satisfies all three tests.[2] *Id.*

Here, it is undisputed that Bayshore SC was not Appellants' direct employer. However, at the time of Poch's death and Key's injuries, Bayshore SC had contracted with Job Place to provide additional workers for its excavation site. Bayshore's own employees, including Lenart, assisted in the same type of removal work as Poch and Key. The work Key and Poch performed for Bayshore SC was not only part of Bayshore SC's trade or business but essential to it because its lease agreement required the company leave the leased land in the same or better condition. Therefore, we find all three *Bailey* tests are met in the present situation. Accordingly, we affirm the circuit court's legal determination that Bayshore SC is entitled to tort immunity as Poch and Key's statutory employer.

### B. Borrowed Employee

Appellants maintain the circuit court should have found Bayshore SC failed to meet the first prong of the borrowed employee test because there was no express or implied contract for hire. Further, Appellants argue Bayshore SC's contract with Job Place was "fatally flawed" because neither Bayshore nor Job Place transferred workers' compensation documentation as required by sections 40–68–70–110 of the South Carolina Code. As such, Appellants contend Bayshore

---

**2.** Though we find all three factors are met here, in doing so we note the supreme court stated in *Olmstead v. Shakespeare*, 354 S.C. 421, 424, 581 S.E.2d 483, 485 (2003): "If the activity at issue meets even one of these three criteria, the injured employee qualifies as the statutory employee of 'the owner.'"

SC should not be deemed their employer. Bayshore maintains Poch and Key were borrowed employees performing the work of and under the direct control of Bayshore SC.

Because we found Bayshore SC was Poch and Key's statutory employer and entitled to workers' compensation immunity under that theory, we need not address the borrowed employee argument. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## C. Fraud and Meeting of the Minds

 Appellants maintain Bayshore SC fraudulently misrepresented the work it required the temporary employees to perform for the purpose of inducing Job Place to enter into the contract. Additionally, Appellants maintain the practice of fraud will vitiate all contracts, and here, the nine elements of fraud are met. Accordingly, Appellants assert Bayshore SC cannot rely upon workers' compensation coverage to exempt itself from its tortious conduct since an employment contract is an essential element of the defense.

Appellants also argue no contract of employment exists because the parties to the contract never reached a meeting of the minds, and therefore, acceptance of the contract terms did not occur. Thus, Bayshore SC was not entitled to hide behind the shield of workers' compensation immunity.

We find these arguments have no merit because Bayshore SC qualifies as a statutory employer and neither fraud nor a lack of the meeting of the minds were articulated in *Cason v. Duke Energy Corp.,* as exceptions to the exclusivity provision. 348 S.C. 544, 548 n. 2, 560 S.E.2d 891, 893 n. 2 (2002) (finding only the following are exceptions to workers' compensation exclusivity: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations).

## II. Bayshore Corp's Immunity under Workers' Compensation Act

Appellants maintain Bayshore Corp cannot rely upon workers' compensation immunity because it was not Appellants' "employer." Instead, Appellants argue Bayshore Corp was a "co-subcontractor" to Bayshore SC and Job Place, and because co-subcontractors are excluded from workers' compensation coverage, Appellants can pursue a tort or contract remedy against Bayshore. Therefore, the circuit court erred in dismissing Appellants' claims against Bayshore. We disagree.

### a. *Bayshore Corp v. Bayshore SC Relationship*

To support the assertion above, Appellants maintain the circuit court erred in failing to distinguish between Bayshore Corp and Bayshore SC in making its findings concerning whether an employment relationship existed. Essentially, Appellants argue the circuit court erroneously found Bayshore Corp stood in the same position as its subsidiary Bayshore SC in relation to the employment of Appellants. Specifically, Appellants contend the circuit court misinterpreted *Nix v. Columbia Staffing Inc.*, 322 S.C. 277, 471 S.E.2d 718 (Ct.App. 1996). Instead, Appellants argue *Monroe v. Monsanto Co.*, 531 F.Supp. 426 (D.C.S.C.1982) is the appropriate case to consider when determining whether Bayshore Corp and Bayshore SC are separate and distinct entities for purposes of workers' compensation. Further, under the factors set forth in *Monroe*, Appellants argue the circuit court erred in finding Bayshore Corp was exempt from suit in tort because it stood in the same position as its subsidiary.[3]

Bayshore maintains it is immune as an upstream employer because Appellants were performing the work of Bayshore SC and Bayshore Corp. Bayshore argues it receives immunity under the exclusivity provision because Appellants were actually doing the work of Bayshore Corp not because of a

---

**3.** Though we believe *Monroe* is persuasive, we do not believe it is controlling, and we rely upon other case law from South Carolina. We also note with interest that no South Carolina court has used the test articulated in *Monroe* to date. Therefore, in analyzing whether or not Bayshore Corp is also entitled to workers' compensation immunity, we rely on our state court cases which were decided after *Monroe*.

parent/subsidiary relationship. However, even if *Monroe* is applicable, Bayshore contends it would still be entitled to immunity.

### b. Upstream Statutory Employer

Bayshore relies on *Voss v. Ramco, Inc.*, to support its assertion that it is immune as an upsteam employer where this court found Voss was a statutory employee of Ramco even though NATCO was Voss's direct employer rather than Ramco. 325 S.C. 560, 569, 482 S.E.2d 582, 587 (Ct.App.1997). NATCO, a company owned by Jones that sold equipment manufactured by Ramco, hired Voss as a sales representative. 325 S.C. at 563, 482 S.E.2d at 583–84. The *Voss* court found selling the equipment was an essential part of Ramco's business; thus, Jones's employees were statutory employees of Ramco. *Id.* at 568, 482 S.E.2d at 586. In its holding, the court referenced section 42-1-400 of the South Carolina Code (1985) which provides:

> When any person, in this section and §§ 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and § § 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

325 S.C. at 566, 482 S.E.2d at 585. Thereafter, the court stated: "[D]epending on the nature of the work performed by the subcontractor, an employee of a subcontractor may be considered a statutory employee of the owner or upstream employer." *Id.*

Additionally, Bayshore relies on *Ost v. Integrated Products, Inc.*, 296 S.C. 241, 371 S.E.2d 796 (1988), where the supreme court discussed several cases to determine whether employees of a secondary employer constitute statutory employees of the principal employer. There, the *Ost* court held employees of National Sales Company, a sister company of Integrated, were

statutory employees of Integrated. *Id.* at 247, 371 S.E.2d at 799. In making its determination, the court considered the following factors: 1) Integrated's control over National Sales and the importance of National Sales selling Integrated's product; 2) the companies' intertwined operations; and 3) the similarity of the companies' business activities and shared employees. *Id.* at 245–47, 371 S.E.2d at 798–800.

We recognize the above cases and referenced statutes involve a contractor/subcontractor relationship rather than a parent/subsidiary relationship. However, we find the statutes, cases, and factors considered therein equally appropriate to consider in the current situation. We find Poch and Key statutory employees of Bayshore Corp under *Voss* because Poch and Key's work was an essential part of Bayshore Corp's business. Furthermore, because Bayshore Corp wholly owned Bayshore SC, it was financially beneficial to the parent for Bayshore SC to be a profitable subsidiary.

We believe Poch and Key are statutory employees under the *Ost* test. First, Bayshore Corp's salaried employees, including but not limited to Lenart, exercised control over the hourly employees of Bayshore SC. As an additional factor supporting the first prong, and as mentioned above, it was important to Bayshore Corp as the parent company for Bayshore SC to be successful and profitable in this business venture. Second, the companies maintained intertwined operations whether through the hiring process, payroll and accounting, or generally shared procedures. Third, we believe the parent and subsidiary business activities were similar, while they maintained many of the same salaried employees. Accordingly, under the *Ost* test, we find Bayshore Corp is Poch and Key's statutory employer and therefore entitled to workers' compensation immunity.

### III. Affidavits as Evidence

Appellants argue this court should not consider evidence presented in the affidavits of Dunbar, Lenart, and in the second affidavit of Colonna. The wording of this argument is problematic for several reasons, most notably the fact that Appellants put together the record on appeal. We believe Appellants are trying to argue the circuit court erred in

considering these affidavits in making its ruling; therefore, this is the argument we address. In regard to evidentiary rulings, it is within the circuit court's discretion to decide what is admissible and on appeal we should reverse the circuit court's ruling only when based on a legal error. *Wright v. Craft*, 372 S.C. 1, 33, 640 S.E.2d 486, 503 (Ct.App.2006) ("The admissibility of evidence is within the sound discretion of the [circuit] trial court and will not be reversed on appeal absent an abuse of discretion or the commission of legal error prejudicing the defendant.").

### A. Legal Expert Vernon Dunbar's Affidavit

 Appellants maintain the circuit court should disregard Vernon Dunbar's affidavit because his expert testimony was on legal issues and invaded the court's province. Appellants argue Dunbar's testimony went to the heart of the issues to be decided by the court. To support their assertion Appellants cite *Dawkins v. Fields*, 354 S.C. 58, 66–67, 580 S.E.2d 433, 437 (2003), where our supreme court held a circuit court properly refused to consider the affidavit where an expert's affidavit primarily contained legal arguments and conclusions. The *Dawkins* court stated: "In general, expert testimony *on issues of law* is inadmissible." *Id.* at 66, 580 S.E.2d at 437.

Though we agree with Appellants that Dunbar's affidavit addressed the ultimate issue of the case, we do not believe any consideration of the affidavit was outcome determinative due to the clear exclusivity immunity. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005) ("To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof."). Therefore, whether the circuit court used Vernon's affidavit in making its determination makes no difference on appeal. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter.").

### B. Company President Keith Colonna's Second Affidavit

 Appellants argue the circuit court erred in considering the evidence offered in the second affidavit of Colonna

where he contradicted his own prior testimony. Appellants maintain Bayshore Corp and Bayshore SC should be judicially estopped from changing their position on the facts to blur the distinction between Bayshore Corp and Bayshore SC to their advantage. Specifically, Appellants maintain the circuit court can use the "competing" or "sham" affidavit exception to the judicial estoppel test set forth by the supreme court to disregard a contradictory subsequent affidavit.

The "competing" or "sham" affidavit exception argument is not preserved for our review. In Appellants' motion to exclude Colonna's affidavit, they rely only on the doctrine of judicial estoppel which the circuit court ultimately denied. Though they raise the "competing" or "sham" affidavit exception in their Rule 59(e) motion, this is not enough to preserve the argument for review. A party cannot use a motion to reconsider, alter or amend a judgment to present an issue that could have been raised prior to the judgment but was not. *Dixon v. Dixon*, 362 S.C. 388, 399, 608 S.E.2d 849, 854 (2005) (finding issue raised for first time in Rule 59, SCRCP, motion is not preserved for review); *Kiawah Prop. Owners Grp. v. Public Serv. Comm'n.*, 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (stating an issue raised for first time in petition for rehearing not preserved).

Though Appellants maintain Bayshore Corp and Bayshore SC should be judicially estopped from changing their position on the facts to blur the distinction between Bayshore Corp and Bayshore SC to their advantage, we do not believe Appellants developed this argument enough for review. *Glasscock, Inc. v. U.S. Fidelity & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001). ("Short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.")

### C. Larry Lenart's Testimony

Appellants argue the circuit court should disregard the affidavit of Larry Lenart because they were denied an opportunity to cross examine him. Because we do not believe Lenart's testimony was outcome determinative, we find no reversible error. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. at 26, 609 S.E.2d at 509 ("To warrant reversal based on

the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof."). Furthermore, we do not believe Appellants carried their burden of proving prejudice. *See id.* Therefore, whether the circuit court used Lenart's affidavit in making its determination makes no difference on appeal. *See McCall v. Finley,* 294 S.C. at 4, 362 S.E.2d at 28 ("[W]hatever doesn't make any difference, doesn't matter.").

## CONCLUSION

Bayshore SC is entitled to tort immunity under workers' compensation exclusivity. Additionally, we find Bayshore Corp should be entitled to share in Bayshore SC's statutory employer status under the *Voss* and *Ost* tests. Lastly, we affirm all of Appellants' evidentiary arguments. Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and PIEPER, J., concur.